# FEDERAL COMMUNICATIONS COMMISSION ET AL. *v.* ITT WORLD COMMUNICATIONS, INC., ET AL.

No. 83–371.   Argued March 21, 1984—Decided April 30, 1984

POWELL, J., delivered the opinion for a unanimous Court.

*Albert J. Lauber, Jr.*, argued the cause for petitioners. With him on the briefs were *Solicitor General Lee, Acting Assistant Attorney General Willard, Deputy Solicitor General Geller, Leonard Schaitman, Frank A. Rosenfeld, Bruce E. Fein, Daniel M. Armstrong*, and *C. Grey Pash, Jr.*

*Grant S. Lewis* argued the cause for respondents. With him on the brief were *John S. Kinzey, Charles C. Platt, Howard A. White*, and *Susan I. Littman.*

JUSTICE POWELL delivered the opinion of the Court.

The Government in the Sunshine Act, 5 U. S. C. § 552b, mandates that federal agencies hold their meetings in public.

This case requires us to consider whether the Act applies to informal international conferences attended by members of the Federal Communications Commission. We also must decide whether the District Court may exercise jurisdiction over a suit that challenges agency conduct as ultra vires after the agency has addressed that challenge in an order reviewable only by the Court of Appeals.

## I

Members of petitioner Federal Communications Commission (FCC) participate with their European and Canadian counterparts in what is referred to as the Consultative Process. This is a series of conferences intended to facilitate joint planning of telecommunications facilities through an exchange of information on regulatory policies. At the time of the conferences at issue in the present case, only three American corporations—respondents ITT World Communications, Inc. (ITT), and RCA Global Communications, Inc., and Western Union International—provided overseas record telecommunications services. Although the FCC had approved entry into the market by other competitors, European regulators had been reluctant to do so. The FCC therefore added the topic of new carriers and services to the agenda of the Consultative Process, in the hope that exchange of information might persuade the European nations to cooperate with the FCC's policy of encouraging competition in the provision of telecommunications services.

Respondents, opposing the entry of new competitors, initiated this litigation. First, respondents filed a rulemaking petition with the FCC concerning the Consultative Process meetings. The petition requested that the FCC disclaim any intent to negotiate with foreign governments or to bind it to agreements at the meetings, arguing that such negotiations were ultra vires the agency's authority. Further, the petition contended that the Sunshine Act required the Consultative Process sessions, as "meetings" of the FCC, to be

held in public. See 5 U. S. C. § 552b(b).[1] The FCC denied the rulemaking petition, and respondents filed an appeal in the Court of Appeals for the District of Columbia Circuit.

Respondent ITT then filed suit in the District Court for the District of Columbia. The complaint, like respondents' rulemaking petition, contended (i) that the agency's negotiations with foreign officials at the Consultative Process were ultra vires the agency's authority and (ii) that future meetings of the Consultative Process must conform to the requirements of the Sunshine Act. The District Court dismissed the ultra vires count on jurisdictional grounds, but ordered the FCC to comply with the Sunshine Act.[2] Respondent ITT appealed, and the Commission cross-appealed.

The Court of Appeals for the District of Columbia Circuit considered on consolidated appeal the District Court's judgment and the FCC's denial of the rulemaking petition. The District Court judgment was affirmed in part and reversed in part. 226 U. S. App. D. C. 67, 699 F. 2d 1219 (1983). The Court of Appeals affirmed the District Court's ruling that the Sunshine Act applied to meetings of the Consultative Process. It reversed the District Court's dismissal of the ultra

---

[1] Section 552b(b) provides:

"Members [of a federal agency] shall not jointly conduct or dispose of agency business other than in accordance with this section. Except as provided in subsection (c), every portion of every meeting of an agency shall be open to public observation."

Subsection (c) contains exceptions, that are not relevant to the present case. Section 552b(a)(2) defines "meeting" as

"the deliberations of at least the number of individual agency members required to take action on behalf of the agency where such deliberations determine or result in the joint conduct or disposition of official agency business."

Section 552b(a)(1) defines the term "agency" to include "any agency . . . headed by a collegial body composed of two or more individual members . . . and any subdivision thereof authorized to act on behalf of the agency."

[2] The District Court had jurisdiction over the Sunshine Act claim under 5 U. S. C. § 552b(h)(1).

vires count, however. Noting that exclusive jurisdiction for review of final agency action lay in the Court of Appeals, that court held that the District Court nonetheless could entertain under 5 U. S. C. § 703[3] a suit that alleged that FCC participation in the Consultative Process should be enjoined as ultra vires the agency's authority. The case was remanded for consideration of the merits of respondents' ultra vires claim.

The Court of Appeals also concluded that the FCC erroneously had denied respondents' rulemaking petition. Consistent with its affirmance of the District Court, the Court of Appeals held that the FCC had erred in concluding that the Sunshine Act did not apply to the Consultative Process sessions. Further, the court found the record "patently inadequate" to support the FCC's conclusion that attendance at sessions of the Consultative Process was within the scope of its authority. 226 U. S. App. D. C., at 95, 699 F. 2d, at 1247. Although remanding to the FCC, the court suggested that the agency stay consideration of the rulemaking petition, as the District Court's action upon respondents' complaint might moot the question of rulemaking.

We granted certiorari, to decide whether the District Court could exercise jurisdiction over the ultra vires claim and whether the Sunshine Act applies to sessions of the Consultative Process.[4] 464 U. S. 932 (1983). We reverse.

---

[3] Title 5 U. S. C. § 703 provides in part:

"The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action . . . in a court of competent jurisdiction."

The Court of Appeals accepted respondents' contention that review in the Court of Appeals was inadequate to vindicate respondents' claims. See *infra,* at 469.

[4] The finding of the Court of Appeals that the administrative record was inadequate to support the FCC's denial of a petition for rulemaking on the issue of the scope of the FCC's authority to negotiate is not before the Court.

## II

We consider initially the jurisdiction of the District Court to enjoin FCC action as ultra vires. Exclusive jurisdiction for review of final FCC orders, such as the FCC's denial of respondents' rulemaking petition, lies in the Court of Appeals. 28 U. S. C. § 2342(1); 47 U. S. C. § 402(a). Litigants may not evade these provisions by requesting the District Court to enjoin action that is the outcome of the agency's order. See *Port of Boston Marine Terminal Assn.* v. *Rederiaktiebolaget Transatlantic,* 400 U. S. 62, 69 (1970); *Whitney National Bank* v. *Bank of New Orleans,* 379 U. S. 411, 419–422 (1965). Yet that is what respondents have sought to do in this case. In substance, the complaint filed in the District Court raised the same issues and sought to enforce the same restrictions upon agency conduct as did the petition for rulemaking that was denied by the FCC. See *supra,* at 465–466.[5] The appropriate procedure for obtaining judicial review of the agency's disposition of these issues was appeal to the Court of Appeals as provided by statute.

---

[5] ITT urges that the ultra vires claim, unlike the petition for rulemaking, focuses on past rather than future agency conduct. It is true that the complaint in the District Court sought, in addition to prospective relief, a declaration that the Commission had violated the Administrative Procedure Act. See App. 71. But the gravamen of both the judicial complaint and the petition for rulemaking was to require the agency to conduct future sessions on the terms that ITT proposed. Indeed, it seems questionable whether a complaint that sought only a declaration that past conduct was unlawful would present to the District Court a case or controversy over which it could exercise subject-matter jurisdiction. Cf. *Aetna Life Ins. Co.* v. *Haworth,* 300 U. S. 227, 240–241 (1937). In any event, even if the question of the lawfulness of the agency's past conduct were the central element of respondent ITT's judicial complaint, the District Court under the doctrine of primary jurisdiction should have dismissed the complaint, as respondents could have challenged the agency's past conduct by motion before the agency for a declaratory ruling, 47 CFR § 1.2 (1983). See *Whitney National Bank* v. *Bank of New Orleans,* 379 U. S. 411, 421, 426 (1965); *Far East Conference* v. *United States,* 342 U. S. 570, 574, 577 (1952).

The Administrative Procedure Act authorizes an action for review of final agency action in the District Court to the extent that other statutory procedures for review are inadequate. 5 U. S. C. §§ 703, 704. Respondents contend that these provisions confer jurisdiction in the present suit because the record developed upon consideration of the rulemaking petition by the agency does not enable the Court of Appeals fairly to evaluate their ultra vires claim. If, however, the Court of Appeals finds that the administrative record is inadequate, it may remand to the agency, see *Harrison* v. *PPG Industries, Inc.*, 446 U. S. 578, 593–594 (1980), or in some circumstances refer the case to a special master, see 28 U. S. C. § 2347(b)(3). Indeed, in the present case, the Court of Appeals has remanded the case to the agency for further proceedings. We conclude that the District Court lacked jurisdiction over respondents' ultra vires claim.

## III

The Sunshine Act, 5 U. S. C. § 552b(b), requires that "meetings of an agency" be open to the public. Section 552b(a)(2) defines "meetings" as "the deliberations of at least the number of individual agency members required to take action on behalf of the agency where such deliberations determine or result in the joint conduct or disposition of official agency business." Under these provisions, the Sunshine Act does not require that Consultative Process sessions be held in public, as the participation by FCC members in these sessions constitutes neither a "meeting" as defined by § 552b(a)(2) nor a meeting "of the agency" as provided by § 552b(b).

### A

Congress in drafting the Act's definition of "meeting" recognized that the administrative process cannot be conducted entirely in the public eye. "[I]nformal background discussions [that] clarify issues and expose varying views" are a necessary part of an agency's work. See S. Rep. No. 94–

354, p. 19 (1975).   The Act's procedural requirements[6] effectively would prevent such discussions and thereby impair normal agency operations without achieving significant public benefit.[7]   Section 552b(a)(2) therefore limits the Act's application to meetings "where at least a quorum of the agency's members . . . conduct or dispose of official agency business."   S. Rep. No. 94–354, at 2.

Three Commissioners, the number who attended the Consultative Process sessions, did not constitute a quorum of the seven-member Commission.[8]   The three members were, however, a quorum of the Telecommunications Committee. That Committee is a "subdivision . . . authorized to act on behalf of the agency."   The Commission had delegated to the

---

[6] Meetings within the scope of the Act must be held in public unless one of the Act's exemptions is applicable.   § 552b(b).   The agency must announce, at least a week before the meeting, its time, place, and subject matter and whether it will be open or closed.   § 552b(e)(1).   For closed meetings, the agency's counsel must publicly certify that one of the Act's exemptions permits closure.   § 552b(f)(1).   Most closed meetings must be transcribed or recorded.   *Ibid.*

[7] The evolution of the statutory language reflects the congressional intent precisely to define the limited scope of the statute's requirements.   See generally H. R. Rep. No. 94–880, pt. 2, p. 14 (1976).   For example, the Senate substituted the term "deliberations" for the previously proposed terms—"assembly or simultaneous communication," H. R. 11656, 94th Cong., 2d Sess., § 552b(a)(2) (1976), or "gathering," S. 5, 94th Cong., 1st Sess., § 201(a) (1975)—in order to "exclude many discussions which are informal in nature." S. Rep. No. 94–354, p. 10 (1975); see *id.*, at 18.   Similarly, earlier versions of the Act had applied to any agency discussions that "concer[n] the joint conduct or disposition of agency business," H. R. 11656, *supra*, § 552b(a)(2).   The Act now applies only to deliberations that *"determine or result in"* the conduct of *"official* agency business."   The intent of the revision clearly was to permit preliminary discussion among agency members.   See 122 Cong. Rec. 28474 (1976) (remarks of Rep. Fascell).

[8] Since the Consultative Process sessions at issue here, held in October 1979, the Commission's membership has been reduced to five.   Pub. L. 97–253, § 501(b), 96 Stat. 805 (effective July 1, 1983).

Committee, pursuant to § 5(d)(1) of the Communications Act of 1934, 48 Stat. 1068, as amended, 47 U. S. C. § 155(d)(1), the power to approve applications for common carrier certification.[9]  See 47 CFR § 0.215 (1983).  The Sunshine Act applies to such a subdivision as well as to an entire agency. § 552b(a)(1).

It does not appear, however, that the Telecommunications Committee engaged at these sessions in "deliberations [that] determine or result in the joint conduct or disposition of official agency business."  This statutory language contemplates discussions that "effectively predetermine official actions."  See S. Rep. No. 94–354, at 19; accord, id., at 18. Such discussions must be "sufficiently focused on discrete proposals or issues as to cause or be likely to cause the individual participating members to form reasonably firm positions regarding matters pending or likely to arise before the agency."  R. Berg & S. Klitzman, An Interpretive Guide to the Government in the Sunshine Act 9 (1978) (hereinafter Interpretive Guide).[10]  On the cross-motions for summary judgment, however, respondent ITT alleged neither that the Committee formally acted upon applications for certification at the Consultative Process sessions nor that those sessions resulted in firm positions on particular matters pending or likely to arise before the Committee.[11]  Rather, the sessions

---

[9] Common carriers "in interstate or foreign communication by wire or radio" or "radio transmission of energy," 47 U. S. C. § 153(h), must obtain from the Commission a certificate of public convenience or necessity before undertaking construction or operation of additional communications lines. 47 U. S. C. § 214.  Permits must be obtained also for construction of radio broadcasting stations.  47 U. S. C. § 319.

[10] The Office of the Chairman of the Administrative Conference of the United States prepared the Interpretive Guide at Congress' request, § 552b(g), and after extensive consultation with the affected agencies.  See Interpretive Guide, at v.

[11] Memorandum in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion to Dismiss or for Summary Judg-

provided general background information to the Commissioners and permitted them to engage with their foreign counterparts in an exchange of views by which decisions already reached by the Commission could be implemented. As we have noted, Congress did not intend the Sunshine Act to encompass such discussions.

The Court of Appeals did not reach a contrary result by finding that the Commissioners were deliberating upon matters within their formally delegated authority. Rather, that court inferred from the members' attendance at the sessions an undisclosed authority, not formally delegated, to engage in discussions on behalf of the Commission. The court then concluded that these discussions were deliberations that resulted in the conduct of official agency business, as the discussions "play[ed] an integral role in the Commission's policymaking processes." 226 U. S. App. D. C., at 89, 699 F. 2d, at 1241.

We view the Act differently. It applies only where a subdivision of the agency deliberates upon matters that are within that subdivision's formally delegated authority to take official action for the agency. Under the reasoning of the Court of Appeals, any group of members who exchange views or gathered information on agency business apparently could be viewed as a "subdivision . . . authorized to act on behalf of the agency." The term "subdivision" itself indicates agency members who have been authorized to exercise formally delegated authority. See Interpretive Guide, at 2–3. Moreover, the more expansive view of the term "subdivision" adopted by the Court of Appeals would require public attendance at a host of informal conversations of the type Congress understood to be necessary for the effective conduct of

ment 6–11, 46–50, and Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment 23–27, in Civ. No. 80–0428 (Dist. Ct. DC).

agency business.[12] In any event, it is clear that the Sunshine Act does not extend to deliberations of a quorum of the subdivision upon matters not within the subdivision's formally delegated authority. Such deliberations lawfully could not "determine or result in the joint conduct or disposition of official agency business" within the meaning of the Act.[13] As the Telecommunications Committee at the Consultative Process sessions did not consider or act upon applications for common carrier certification—its only formally delegated authority—we conclude that the sessions were not "meetings" within the meaning of the Sunshine Act.

## B

The Consultative Process was not convened by the FCC, and its procedures were not subject to the FCC's unilateral control. The sessions of the Consultative Process therefore are not meetings "of an agency" within the meaning of § 552b(b). The Act prescribes procedures for the agency to follow when it holds meetings and particularly when it chooses to close a meeting. See n. 6, *supra*. These provisions presuppose that the Act applies only to meetings that the agency has the power to conduct according to these procedures. And application of the Act to meetings not under agency control would restrict the types of meetings that agency members could attend. It is apparent that Congress, in enacting requirements for the agency's conduct of its own meetings, did not contemplate as well such a broad sub-

---

[12] This point is made by the memorandum *amicus curiae* submitted to the Court by the American Bar Association: "The . . . decision [of the Court of Appeals] places . . . agencies in an untenable position. [U]nder the court's decision, [agency] members may not meet with persons from outside the agency to discuss any matter within the official concern of the agency without complying with the provisions of the Sunshine Act. Such a result would have a pronounced (and deleterious) effect on the interaction between the agencies and the public . . . ." Memorandum, at 5–6.

[13] Ultra vires action by a subdivision would be of no legal effect.

stantive restraint upon agency processes.    See S. Rep. No. 94–354, at 1.

## IV

For these reasons, we reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*