PACIFIC POWER AND LIGHT COMPANY, a Maine corporation; Portland General Electric Company, an Oregon corporation; Puget Sound Power & Light Company, a Washington corporation; the Washington Water Power Company, a Washington corporation; Idaho Power Company, a Maine corporation; Utah Power & Light Company, a Utah corporation; the Montana Power Company, a Montana corporation, CP National Corporation, a California corporation; Public Utilities Commissioner of Oregon; and Idaho Public Utilities Commission, Plaintiffs-Appellants,

v.

BONNEVILLE POWER ADMINISTRATION, and Peter T. Johnson, Administrator, Bonneville Power Administration, Defendants-Appellees,

and

Aluminum Company of America, et al., Defendants-Intervenors-Appellees.

No. 84–4072.

United States Court of Appeals, Ninth Circuit.

Argued May 6, 1985.

Submitted June 28, 1985.

Decided July 28, 1986.

Peter R. Jarvis, Stoel, Rives, Boley, Fraser & Wyse, Portland, Or., for plaintiffs-appellants.

Harvard P. Spigal, Gen. Counsel, John A. Cameron, Jr., Asst. Gen. Counsel, Kurt R. Casad, and David J. Adler, Portland, Or., Bonneville Power Administration, and Charles H. Turner, U.S. Atty., and Jack G. Collins, Thomas C. Lee, Asst. U.S. Attys., Portland, Or., for defendants-appellees.

Eric Redman, Dian M. Grueneich, Heller, Ehrman, White & McAuliffe, Seattle, Wash., for defendants-intervenors-appellees.

Before GOODWIN, SCHROEDER and BEEZER, Circuit Judges.

GOODWIN, Circuit Judge.

This direct action was filed in district court against the Bonneville Power Administration (BPA) raising issues within the scope of the Pacific Northwest Electric Power Planning and Conservation Act, 16 U.S.C. § 839 *et seq.* Appellants electric utilities appeal the district court's dismissal of their action for want of jurisdiction. Because exclusive jurisdiction lies in this court under 16 U.S.C. § 839f(e)(5), we affirm the dismissal.

■ This appeal is limited to the question of district court jurisdiction. Some factual background will place the question in perspective. One purpose of the Pacific Northwest Electric Power Planning and Conservation Act was to reduce the disparity in electric rates between customers of investor-owned utilities and preference customers of BPA. *See generally* Blumm, *The Northwest's Hydroelectric Heritage: Prologue to the Pacific Northwest Electric Power Planning and Conservation*

*Act,* 58 Wash.L.Rev. 175, 228 (1983). To that end, the Act requires BPA to enter into agreements with investor-owned utilities to enable those utilities to exchange their own, higher-priced power for an equivalent amount of lower-priced BPA power. 16 U.S.C. § 839c(c). While these agreements are called residential energy exchange agreements, there is not, in fact, any exchange of energy at all, but merely an accounting transaction in which BPA credits a subsidy to investor-owned utilities based upon each utility's average system cost. The Act authorizes the BPA to determine average system cost. 16 U.S.C. § 839c(c)(7). The methodology for calculating average cost is subject to review and approval by the Federal Energy Regulatory Commission (FERC). *Id.* *See* 18 C.F.R. Part 300 (1984). In this case, the investor-owned utilities challenge that methodology.

Following the statutorily required consultation process, 16 U.S.C. § 839c(c)(7), BPA adopted an average cost methodology in August 1981. BPA implemented the methodology when FERC approved it on an interim basis, *cf.* 18 C.F.R. § 300.20 (1984), in October 1981, 46 *Fed.Reg.* 50,517 (Oct. 14, 1981), *corrected,* 46 *Fed.Reg.* 55,952 (Nov. 13, 1981), *codified at* 18 C.F.R. § 35.13a (1982). FERC gave final approval without substantive changes in October 1983. 48 *Fed.Reg.* 46,970 (Oct. 17, 1983); 18 C.F.R. Part 301 (1984).

Even before interim or final FERC approval of the methodology, BPA entered into exchange agreements with investor-owned utilities which incorporated the average cost methodology it had adopted. Those agreements restrict the manner in which BPA may change the methodology. The agreements allow BPA to change the methodology during the course of the agreements, but only after consultation with the affected utilities and the Northwest Power Planning Council, and not within one year of FERC approval of the immediately previous methodology.[1]

---

1. The restrictions on revising the average cost methodology, as incorporated in the exchange agreements, provide that:

The Administrator, at his or her discretion, or upon written request from three-quarters of the utilities who are parties to contracts pur-

Two years after BPA adoption and interim FERC approval of the average cost methodology (but only days after final FERC approval), BPA began a consultation process for changing the methodology. *See* 48 *Fed.Reg.* 45,829 (Oct. 7, 1983). BPA issued a proposed new methodology in February 1984, 49 *Fed.Reg.* 4230 (Feb. 3, 1984) which it adopted in June 1984. 49 *Fed.Reg.* 25,208 (June 19, 1984). FERC considered, 49 *Fed.Reg.* 24,146 (June 8, 1984), and approved the new methodology in October 1984, 49 *Fed.Reg.* 39,293 (Oct. 5, 1984), *revising* 18 C.F.R. § 301.1 (1984). FERC denied a petition for rehearing on the merits. 50 *Fed.Reg.* 4970 (Feb. 5, 1985). BPA has implemented the new average cost methodology.

The utilities allege that BPA's consideration and approval of the new average cost methodology was a breach of its contractual obligations to the investor-owned utilities because the agency initiated the new consultation process less than one year after *final* FERC approval of the first average cost methodology. While the utilities' complaint sought declaratory relief, the district court reached only the jurisdiction question. *Pacific Power & Light Co. v. BPA*, 589 F.Supp. 539, 543–44 (D.Or.1984).[2] It concluded that "[a]lthough [the utilities] seek to characterize their ... claim as a pure contract issue unentangled with the merits or procedure of BPA's ratemaking proceeding, my exercise of jurisdiction would necessarily impact the course of the [pending] rate case," because the "issues are interwoven." *Id.* at 545. The utilities claims presented a "rate matter in a more general sense," subject to exclusive Ninth Circuit jurisdiction because the suit challenged the timing of BPA's ratemaking proceeding. *Id.* In holding that it had no jurisdiction, the court noted that "Congress has already specified a procedure for review of plaintiffs' claim" by the Ninth Circuit. The district court concluded that it would have jurisdiction only if there were an affirmative basis for jurisdiction which was not precluded by the Act. *Id.* at 543. Because it held that the Act precluded review by any court other than the Ninth Circuit, the court did not decide whether there was an affirmative basis for jurisdiction. *Id.* at 543–44. *See also Public Power Council v. Johnson*, 589 F.Supp. 198, 203–04 (D.Or.1984) (companion case also dismissed for lack of jurisdiction); *Public*

suant to [16 U.S.C. § 839c(c) ] or from three-quarters of his preference customers, or from three-quarters of Bonneville's direct service industry customers, shall initiate a consultation process as provided for in [16 U.S.C. § 839c(c) ]. After completion of this process, the Administrator may propose a new [average cost] methodology, provided that any consultation process may not be initiated sooner than 1 year after the immediately previous [average cost] methodology has been adopted by Bonneville and approved by the FERC. 18 C.F.R. § 35.13a(d)(6) (1982).

This paragraph, while contained in the exchange agreements, was deleted from the average cost methodology as ` finally approved by FERC. 48 *Fed.Reg.* 46,972 (Oct. 17, 1983). That agency concluded that any change in the methodology was a matter of BPA discretion which is "superfluous to the [FERC] regulations." *Id.* Because it deleted the restrictions from the approved methodology, FERC expressed no view on whether or how BPA could change the methodology. *Id.*

**2.** Concurrently with filing this action in district court, some of the utilities filed a separate civil action in district court seeking injunctive relief.

That action was dismissed, *Public Utility Comm'r of Oregon v. BPA*, 583 F.Supp. 752 (D.Or.1984); an appeal is pending before this court (No. 84–3722). The parties in that suit also filed an original action for injunctive relief in this court, *Public Utility Comm'r of Oregon v. BPA*, 767 F.2d 622 (9th Cir.1985).

After the present action was dismissed, some of the parties herein filed three original petitions for review with this court, *Pacificorp v. BPA, petition filed*, No. 84–7569 (9th Cir. Aug. 31, 1984); *Pacificorp v. FERC, petition filed*, No. 84–7862 (9th Cir. Dec. 26, 1984); *Pacificorp v. FERC, petition filed*, No. 85–7103 (9th Cir. Feb. 25, 1985). Several other cases are also pending before this court in which substantive challenges are raised to BPA ratemaking actions under the Act. *See City of Seattle v. Johnson, petition filed*, No. 83–7947 (9th Cir. Dec. 15, 1983); *Puget Sound Power & Light Co. v. Johnson, petition filed*, No. 84–7591 (9th Cir. Sept. 12, 1984); *Atlantic Richfield Co. v. BPA, petition filed*, No. 83–7971 (9th Cir. Dec. 23, 1983); *Intalco Aluminum Corp. v. Johnson, petition filed*, No. 83–7981 (9th Cir. Dec. 28, 1983); *City of Seattle v. Johnson, appeal filed*, No. 84–4425 (9th Cir. Dec. 24, 1984).

*Utility Comm'r of Oregon v. BPA,* 583 F.Supp. 752, 755–57 (D.Or.1984) (same).

The Act creates a scheme for judicial review with exclusive jurisdiction in either this court or the district court depending upon the nature of the agency action being challenged. When a statute establishes a specific scheme for obtaining review, that scheme may be presumed to be exclusive. *Central Lincoln Peoples' Util. Dist. v. Johnson,* 735 F.2d 1101, 1109 (9th Cir.1984) *citing Nader v. Volpe,* 466 F.2d 261, 266 (D.C.Cir.1972). *See UMC Industries v. Seaborg,* 439 F.2d 953, 955 (9th Cir.1971) (if Congress designates forum for judicial review of administrative action, that forum is exclusive even if statute does not specifically so indicate). Congress may freely choose the court in which judicial review may occur. *City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320, 336, 78 S.Ct. 1209, 1218, 2 L.Ed.2d 1345 (1958).

The division of jurisdiction is not as complicated as either BPA or the utilities would have us believe. The statutory language and legislative history of the Act demonstrate a relatively straightforward division between the district court and this court. We begin with the language of the Act's judicial review provision, 16 U.S.C. § 839f(e)(5).[3] There are four types of suits for which this court has original jurisdiction under the Act: suits challenging (1) the constitutionality of the Act; (2) the constitutionality of any action taken pursuant to the Act's statutory authority; (3) final actions or other decisions by BPA or the Northwest Power Planning Council, taken pursuant to the Act's statutory authority; and (4) the implementation of final actions by BPA or the Northwest Power Planning Council, taken pursuant to the

authority of any of four enumerated federal power statutes. The section permits district court jurisdiction only over "other actions" which do not lie within this court's exclusive jurisdiction. Unlike the sentence providing for this court's jurisdiction, the final sentence of § 839f(e)(5) makes no reference to either BPA or the Northwest Power Planning Council. It is clear, therefore, that the district court has exclusive jurisdiction over nonconstitutional suits challenging actions taken pursuant to the Act by agencies other than BPA or the Northwest Power Planning Council. Moreover, because the first sentence comprehensively lists those actions of BPA or the Northwest Power Planning Council which are subject to judicial review, the district court has no jurisdiction over challenges to BPA or Northwest Power Planning Council actions under the Act.

This court has consistently interpreted the Act with a broad view of this court's jurisdiction and a narrow definition of district court jurisdiction. *Forelaws on Board v. Johnson,* 709 F.2d 1310 (9th Cir. 1983) (final actions by BPA or the Northwest Power Planning Council must be reviewed by this court); *Central Lincoln Peoples' Util. Dist.,* 735 F.2d at 1108–10 (suit challenging BPA contract offers must be brought in this court). The District of Oregon (the only district court to have written opinions under the Act) has consistently dismissed suits for lack of jurisdiction, holding that suits challenging BPA actions under the Act are subject to exclusive review by this court. *See City of Seattle v. Johnson,* 600 F.Supp. 306, 311–12 (D.Or. 1984) (declaratory judgment action seeking to enforce contractual obligations); *Public Power Council,* 589 F.Supp. at 202–04 (contractual claims which are a major element

---

**3.** Section 839f(e) provides for judicial review. Subsection 839f(e)(5) defines jurisdiction under the Act:

Suits to challenge the constitutionality of this chapter, or any action thereunder, final actions and decisions taken pursuant to this chapter by the Administrator or the [Northwest Power Planning Council], or the implementation of such final actions, whether brought pursuant to this chapter, the Bonne-

ville Project Act ..., the Act of August 31, 1964 ..., or the Federal Columbia River Transmission System Act ..., shall be filed in the United States court of appeals for the region.... Such court shall have jurisdiction to hear and determine any suit brought as provided in this section.... Suits challenging any other actions under this chapter shall be filed in the appropriate court.

of a pending rate case); *Public Utility Comm'r*, 583 F.Supp. at 755 (interlocutory challenge to BPA actions).

The legislative history of § 839f(e)(5) also supports the view that this court has exclusive jurisdiction over challenges to BPA actions pursuant to the Act. Earlier versions of the legislation provided for this court's exclusive jurisdiction over all cases except rate cases. *See* H.R.Rep. No. 96–976 (Part II), 96th Cong., 2d Sess. 23 (1980), U.S.Code Cong. & Admin.News 1980, p. 5989 ("Suits to challenge final actions and decisions taken pursuant to this Act ... shall be filed in the appropriate Federal court in the case of rates ... and in the United States court of appeals for the region in the case of other actions or decisions subject to the provisions of this subsection."). The judicial review provision was later changed to enlarge Ninth Circuit and narrow district court jurisdiction. *See* 126 Cong.Rec. H–10686 (daily ed. Nov. 17, 1980) (statement of Rep. Dingell) (the legislation is "revised to make it clear that suits to challenge the constitutionality of the act or any action thereunder and final actions and decisions taken pursuant to the act by either BPA or the council shall be filed in the U.S. court of appeals for the region. This would include rate matters.").

■ This court has recognized that one Congressional purpose in providing direct review by this court is to expedite litigation challenging BPA actions under the Act. *Forelaws on Board*, 709 F.2d at 1311, *affirming National Wildlife Federation v. Johnson*, 548 F.Supp. 708, 709 (D.Or.1982). *See* H.R.Rep. No. 96–976 (Part II) 30–31 (1980). Allowing bifurcated review would frustrate this legislative purpose. *Forelaws on Board*, 709 F.2d at 1311. By allowing direct review by this court, the Act prevents district courts in different states of the region from rendering potentially conflicting interpretations of the Act. Original jurisdiction in this court permits uniform interpretation of the Act and promotes expedited review.

The utilities argue that this case is an exception to this court's exclusive jurisdic-

tion because they do not challenge a final action by BPA, but merely seek a declaratory judgment to prevent a breach of contract. They also argue that, because the cause of action is grounded in contract law, not BPA's statutory authority under the Act, it is a district court case.

The district court agreed that, because the utilities did not challenge a final BPA action but sought only interlocutory relief, there was no jurisdiction in this court. *Pacific Power & Light*, 589 F.Supp. at 543. That court correctly noted that, "[a]n absence of jurisdiction for the Ninth Circuit does not *ipso facto* create jurisdiction in the district court." *Id.*

■ We need not decide whether this court has jurisdiction over interlocutory appeals. It is clear, however, that the Act does not permit district court jurisdiction where the effect of an action is to challenge a BPA proceeding, the substance of which eventually will be subject to direct review by this court. The utilities have filed such a review proceeding in this court in which they present the same issues they seek the district court to determine in the merits of this case. *See Pacificorp. v. Federal Energy Regulatory Commission*, 795 F.2d 816 (9th Cir. filed this date.)

Permitting district court jurisdiction over interlocutory decisions by BPA, but requiring Ninth Circuit jurisdiction over final BPA actions would frustrate the legislative intent to expedite review of BPA decisions. *See Forelaws on Board*, 709 F.2d at 1313 (bifurcation irrational in light of statutory emphasis upon prompt resolution of litigation). Without clear legislative instruction to the contrary, we cannot sanction a scheme of review which would allow essentially the same BPA decision to be subject to interlocutory review by the district court and final review by this court. *See Id.;* 126 *Cong.Rec.* H10686. Exclusive jurisdiction, if any, lies in this court.

Although the utilities' action is based upon their contracts with BPA, the effect of their action would be to challenge BPA's

ratemaking proceedings and the agency's obligation to undertake ratemaking in a manner consistent with its contractual commitments.

The utilities err in arguing that the legal theory upon which they base their claims is dispositive of the jurisdiction question. In § 839f(e)(5), Congress has decided that jurisdiction under the Act should be a function of the agency whose actions are being challenged rather than a function of the cause of action which petitioner asserts. This jurisdictional scheme is consistent with myriad statutes which confer original jurisdiction on courts of appeals based upon the agency being attacked. *See e.g.,* 28 U.S.C. § 2321 (actions by the Interstate Commerce Commission); 28 U.S.C. § 2342 (actions by several independent federal commissions); 29 U.S.C. § 160 (orders of the National Labor Relations Board); 15 U.S.C. § 717r (Federal Energy Regulatory Commission orders under the Natural Gas Act). *See also Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) (court of appeals jurisdiction over Nuclear Regulatory Commission orders.)

■ Unless constitutional issues are raised, jurisdiction under the Act does not turn on the legal theory underlying a suit. For jurisdictional purposes, therefore, it matters not whether the utilities' suit is grounded in contract, administrative law or some other legal theory. Instead, jurisdiction arises because the actions of a particular agency are being challenged and because of the nature of the agency action at issue. The proper inquiry focuses on the agency being attacked and whether the factual basis for that attack is an agency action authorized by the Act. *Cf. FCC v. ITT World Communications, Inc.,* 466 U.S. 463, 468–69 & n. 5, 104 S.Ct. 1936, 1939–40 & n. 5, 80 L.Ed.2d 480 (1984) (litigants may not evade judicial review scheme by attacking the results of statutorily authorized actions instead of attacking agency action directly).

What is crucial here is that the utilities are alleging that BPA's exercise of its au-

thority under § 839c(c) to establish an average cost methodology is in breach of the agency's contractual obligations. Because the utilities challenge a BPA ratemaking, authorized by the Act, there is no district court jurisdiction.

AFFIRMED.