**NATURAL RESOURCES DEFENSE COUNCIL, Plaintiff,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Defendant.**

Civ. A. No. 92–1378 (RCL).

United States District Court, District of Columbia.

June 19, 1992.

Patti A. Goldman, Alan Butler Morrison, Public Citizen Litigation Group, Washington, D.C., for Natural Resources Defense Council.

Elizabeth Ann Pugh, Peter S. Modlin, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for E.P.A.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

On June 12, 1992, plaintiff Natural Resources Defense Council ("NRDC") initiated this action against Environmental Protection Agency ("EPA"), challenging EPA's refusal to open to the public meetings of the Governors' Forum on Environmental Management ("Governors' Forum" or "Forum"). On the same date, plaintiff also filed a motion for a preliminary injunction requesting that the Court prohibit EPA staff from providing any support to the Forum and from obtaining any advice from the Forum unless the Forum opens its meetings.[1] Plaintiff bases its action on the Federal Advisory Committee Act ("FACA"), 5 U.S.C.App. II § 10(a).

Although the case is assigned to Judge Lamberth, plaintiff's motion for injunctive relief was heard by this Judge, as Motions Judge, on June 19, 1992 at 10:00 a.m.[2]

---

1. At oral argument, NRDC's counsel asked specifically that the Court enjoin the Administrator of EPA from meeting with members of the Governors' Forum.

2. Accompanying NRDC's pleading for injunctive relief is a motion requesting an expedited hearing. Although the motion requests oral argument for the week of "July 15, 1992," plaintiff

Having considered the pleadings and the arguments raised at the oral hearing this date, plaintiff's motion shall be denied.

## I. BACKGROUND

### A. Statutory and Regulatory Background

#### 1. FACA

Under the terms of FACA, an "advisory committee" includes "any committee ... or similar group ... established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for ... one or more agencies or officers of the Federal Government." 5 U.S.C.App. II § 3(2). FACA imposes certain procedural and operating requirements on advisory committees. As illustration, FACA requires each advisory committee to file a charter and to keep detailed minutes of its meetings. *Id.* §§ 9(c), 10(c). In addition, a representative of the federal government, with authority to order adjournment, must attend advisory committee meetings. *Id.* § 10(e). The public is entitled to advance notice of advisory committee meetings and generally to attend those meetings. *Id.* § 10(a), (d). Subject to the limitations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, advisory committee documents must be made available for public inspection. *Id.* § 10(b).

The regulations promulgated pursuant to FACA provide examples of advisory meetings or groups that are not covered by the Act. Specifically, the regulations exempt "[a]ny committee which is established to perform primarily operational as opposed to advisory functions. Operational functions are those specifically provided by law, such as making or implementing Government decisions or policy." 42 C.F.R. § 101–6.1004(g).

#### 2. The Safe Drinking Water Act

In 1974, Congress enacted the Safe Drinking Water Act ("Act"), 42 U.S.C. §§ 300f *et seq.*, to ensure the safety of the public drinking water supply. Under the Act, EPA and the states share responsibility for implementation of the drinking wa-ter program. EPA sets national standards for levels of specific contaminants. 42 U.S.C. § 300g–1. The states may then establish their own drinking water programs as long as the state standards are no less stringent than the national standards. The states that enact drinking water programs are authorized to exercise primary enforcement authority ("primacy") under the Act. *Id.* § 300g–2.

To date, forty-nine states have been authorized primary enforcement responsibility although EPA still retains a role in implementing the Act. For example, EPA monitors state compliance with the Act, *id.* § 300g–3, and provides technical assistance to the states, *id.* § 300j–1. The Administrator may also provide financial grants to states with primacy. In those states that have not established their own program, EPA retains authority for implementation of the Act.

In 1986, Congress amended the Act to expand the number of regulated contaminants. EPA expects that by 1995 there will be one hundred eleven regulated contaminants. According to defendant, current state resources for implementation of the Act will be overwhelmed by the expansion of the drinking water problem, states will not be able to increase resources to meet this shortfall, and the states will, therefore, allow primacy to revert to EPA.

### B. Factual Background

On January 8, 1992, William K. Reilly, Administrator of EPA, decided to "personally ask [the] assistance" of various Governors to work with the EPA Administrator "in addressing the problem of state ability to carry out delegated program activities." Plaintiff's Exhibit ("Pl.Exh.") 1 to Plaintiff's Motion for a Preliminary Injunction ("Pl.Motion"). In March, 1992, Administrator Reilly invited a bipartisan group of nine Governors to participate in the Governors' Forum. The Forum is chaired by Governor Michael Castle of Delaware.

According to defendant, there have been two preliminary meetings in preparation

clearly intended the week of June 15, 1992, and the Court scheduled the argument accordingly.

for the Forum's meeting on June 21, 1992. First, on April 8, 1992, the Governors' staffs met to prepare a draft statement of options. At another meeting on May 1, 1992, the Governors' designated representatives revised their statement of options into a proposed program of federal/state coordination. The Governors will finalize the program at their June 21, 1992 meeting, at which time two EPA officials will be present. The Forum will then discuss their program with Administrator Reilly at a separate meeting on the evening of June 21, 1992.

## II. DISCUSSION

A temporary restraining order or preliminary injunction may be granted only when the plaintiff demonstrates (1) a substantial likelihood of success on the merits; (2) that irreparable injury will result in the absence of the requested relief; (3) that no other parties will be harmed if temporary relief is granted; and (4) that the public interest favors entry of a temporary restraining order. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir. 1977); *accord, Virginia Petroleum Jobbers Ass'n v. Federal Power Commission,* 259 F.2d 921, 925 (D.C.Cir.1958). This test is not a wooden one, for as our Court of Appeals has noted, relief may be granted "with either a high probability of success and some injury, or *vice versa.*" *Cuomo v. United States Nuclear Regulatory Commission,* 772 F.2d 972, 974 (D.C.Cir.1985) (per curiam) (emphasis in original). *See also Holiday Tours,* 559 F.2d at 843.

In order to prevail on the merits, plaintiff must demonstrate that the Forum is an "advisory committee" subject to FACA. Recognizing the Pandora's Box that could erupt if FACA were construed broadly, the Supreme Court has adopted a restrictive interpretation of FACA: "FACA was enacted to cure specific ills, above all the wasteful expenditure of public funds for worthless committee meetings and biased proposals; although its reach is extensive, we cannot believe that it was intended

to cover every formal and informal consultation between the President or an Executive agency and a group rendering advice." *Public Citizen v. United States Department of Justice,* 491 U.S. 440, 453, 109 S.Ct. 2558, 2565–66, 105 L.Ed.2d 377 (1989). Pursuant to "superceding Supreme Court instruction in *Public Citizen*," [3] the Court cannot conclude that plaintiff has a substantial likelihood of success on the merits.

NRDC emphasizes the advisory role of the Governors' Forum. In particular, plaintiff contends, the Forum was established and appointed by EPA, has a fixed membership of nine Governors with one designated by the EPA to serve as its chairperson, and provides advice to EPA on matters within EPA's regulatory power. Moreover, NRDC argues, "[t]his is not a situation in which federal and state regulators are dividing up their joint enforcement responsibilities, or establishing regulations governing a coordinated program. To the contrary, states can have primary enforcement responsibility under the Safe Drinking Water Act only if their programs meet certain statutory and regulatory criteria." Reply in Support of Plaintiff's Application for Preliminary Injunction ("Pl.Reply"), at 4. The Court does not agree with NRDC's contentions.

The Governors serving on the Forum should not be viewed as merely advisors to EPA. Rather, the Court is persuaded, at this juncture, that they act operationally as independent chief executives in partnership with the federal agency. To hold otherwise would ignore the responsibilities the states maintain in complying with the Safe Drinking Water Act.

First, it is clear from the plain language of the Safe Drinking Water Act that the states play a critical and independent role of implementation. In fact, the Safe Drinking Water Act is structured so that principal responsibility for compliance can be held by either the EPA or the states. *See* 42 U.S.C. § 300g–2. The mere fact that EPA is required to set minimum standards does not mean that the states cannot have

---

**3.** *Food Chemical News v. Young,* 900 F.2d 328, 333 (D.C.Cir.1990).

"primary enforcement responsibility for public water systems," 42 U.S.C. § 300g–2(a)(1), and that the Governors' Forum must, therefore, serve an advisory role. As NRDC's counsel conceded at oral argument, states can clearly deviate from the minimums established by EPA.

The workings of the Forum underscore its independent, nonadvisory, operational capacity. On June 21, 1992, the Forum will meet to finalize its program. The Forum's program appears to propose the coordination of federal and state efforts in three general areas: 1) methods to increase funding at the state and federal levels for implementation of the drinking water program; 2) ways in which EPA and the states can work together to create the flexibility within the current drinking water program to enable states to retain primacy; and 3) ways in which legislation can ease the burden on the states. Thus, many of the Forum's proposals cannot be implemented through unilateral action on the part of either the EPA or the states. Instead, they may require legislative action on both the state and federal levels.

In addition, the Forum's organization does not resemble an advisory committee. Although Administrator Reilly proposed establishment of the Forum and despite plaintiff's protestations to the contrary, it appears that Governor Castle is responsible for convening meetings, setting the agendas, and drafting proposals. In fact, at the hearing, defendant unequivocally stated that the proposals concerning compliance with the Safe Drinking Water Act were drafted by the Secretary of the Environment in Delaware. Although an EPA official who was present at the initial meeting memorialized the preliminary proposals of the Governors, EPA did not play any role

in formulating those plans. In addition, the Forum does not receive federal funds, and the Governors bear their own expenses for Forum-related activities; the membership of the Forum is not fixed, and it is uncertain whether, and in what capacity, the Forum will conduct future proceedings.

Fourth, this is not a situation—prohibited by FACA—in which the Governors' Forum is necessarily seeking to influence EPA. As defendant points out, the Governors have no reason to lobby EPA for regulatory relief because they are always free under the Safe Drinking Water Act to allow primacy to revert to EPA. Thus, the Governors appear to be trying to work with EPA toward the common goal of ensuring the safety of the public drinking water supply.

Finally, even at this preliminary stage,[4] the Court cannot ignore the federalism and separation of powers concerns, which would arise if the Court were to determine that a body of nine Governors organized to address an environmental problem constitutes an advisory committee under FACA. Although counsel for NRDC suggested at the oral hearing that Governors are often subject to FACA-type state legislation, clearly recognizing the problem, she cited no specific examples supporting her claim. In addition, the Court must not overlook the fact that interfering in this meeting could constitute an incursion into the Executive's powers.

On the present record, the Court cannot conclude that it was the intention of the legislature to include the Governors' Forum within the definition of "advisory committee."[5]

The Court also cannot find that no other parties would be harmed if temporary re-

4. Although the parties mentioned in their pleadings and at oral argument that opening the Governors' Forum meetings could raise substantial constitutional questions, they have not had an opportunity to explore fully these issues.

5. Interestingly, there is pending a proposal to create an exclusion from FACA for "any committee composed wholly of fulltime officers or employees of State or local governments acting in their official capacities who are directed by statute to meet with Federal officials and em-

ployees regarding programs that are shared by Federal, State, and local governments, or which are administered by State and local governments." S. 2039, § 4(2)(C)(iv), 102d Cong., 1st Sess. (introduced Nov. 25, 1991). Although plaintiff argues that there would be no need to amend FACA if such committees were already excluded, one could easily argue instead that the legislature intended to clarify its position in this regard.

lief were granted or that the public interest favors entry of a temporary restraining order. Closed meetings of the Governors' Forum would foster an environment of co-operation and collegiality among the inde-pendent executives. The Governors will be able to engage in a free flow of ideas among each other in an effort to arrive at a solution that may be acceptable to all of the states. By the same token, opening the meetings of the Forum could "have a pro-nounced and deleterious effect" on the in-teractive relationship between the Gover-nors and the EPA. *See F.C.C. v. ITT World Communications, Inc.*, 466 U.S. 463, 473 n. 12, 104 S.Ct. 1936, 1942 n. 12, 80 L.Ed.2d 480 (1984).

### III. CONCLUSION

Accordingly, for the reasons set forth above, it is hereby

ORDERED that plaintiff's motion for a preliminary injunction is denied; it is

FURTHER ORDERED that future prog-ress of this litigation shall be arranged through the Chambers of Judge Royce C. Lamberth.

For the reasons explained above, there shall be no stay of this Order.

IT IS SO ORDERED.