**UNITED STATES of America,**
**Plaintiff,**

v.

**Frank NEELY, Defendant.**

**Civil Action No. 0:08–1370–MJP.**

United States District Court,
D. South Carolina,
Rock Hill Division.

Jan. 29, 2009.

James Michael Carr, Federal Communications Commission, Washington, DC, Susan Z. Hitt, U.S. Attorneys Office, Columbia, SC, for Plaintiff.

Eleazer R. Carter, Carter Law Firm, Columbia, SC, for Defendant.

## ORDER

MATTHEW J. PERRY, JR., Senior District Judge.

## I. INTRODUCTION

This is an action to enforce a $4000 monetary forfeiture assessed by the Federal Communications Commission ("FCC") against Defendant Frank Neely ("Neely"), for repeated violation of FCC regulations. When Neely failed to pay the administratively-ordered penalty, the United States filed this action, pursuant to 47 U.S.C. § 504(a), for judgment in the amount of the forfeiture plus interest and costs. The Defendant timely answered, admitting all factual allegations in the government's Complaint, but claiming the FCC cannot enforce this forfeiture because the agency has failed to comply with the Small Business Regulatory Enforcement Fairness Act of 1996 ("SBREFA"). Both the United States and Neely filed motions for summary judgment and both parties presented oral arguments on their motions before this Court on October 7, 2008. At the hearing the Court granted 30 days' leave to defendant to supplement the record with documents pertaining to Neely's personal finances. Neely has filed no supplemental pleadings, so this matter is ripe for disposition.

## II. STATUTORY AND REGULATORY BACKGROUND

### a. Regulation Of Radio Broadcasting

The FCC is an independent federal regulatory agency, created by Congress to regulate interstate and foreign radio communications pursuant to the Communications Act, 47 U.S.C. §§ 151, *et seq.* Among its statutory duties, the Communications Act gives the FCC the responsibility to ensure that radio stations' signals do not interfere with one another. To that end, the FCC has the authority to require the licensing of all radio stations within U.S. territorial boundaries. *See* 47 U.S.C. § 301 (prohibiting the transmission of radio signals without a license issued by the FCC). The FCC also has authority to make and enforce such rules and regulations as may be necessary to promote efficient use of the radio spectrum. *See* 47 U.S.C. §§ 151, 154(i), 303(r). Radio stations licensed by the FCC are subject to conditions set forth in rules adopted pursuant to that authority and as specified in the licenses themselves. Certain classes of AM broadcast radio stations are licensed to transmit at full power only during daytime hours and must reduce their power to levels prescribed in their licenses at nighttime or, in some cases, must cease broadcasting at nighttime. This is to prevent interference that could occur among stations because certain types of radio signals at certain frequencies travel farther at night. *See* 47 C.F.R. §§ 73.21, 73.99. In the case at hand, the license for Neely's station WLTC(AM) required it to reduce its transmitter power to specified levels at nighttime.

### b. Forfeiture

Section 503(b) of the Communications Act authorizes the FCC to levy forfeitures against licensees who willfully or repeated-

ly fail to comply with the Act or the FCC's rules. 47 U.S.C. § 503(b)(1)(B). Before levying a forfeiture, the agency usually issues a Notice of Apparent Liability ("NAL") and provides the alleged violator with a reasonable opportunity to show why the forfeiture should be cancelled or the penalty reduced. 47 U.S.C. § 503(b)(4); 47 C.F.R. § 1.80(f)(3). If the agency does not cancel the proposed forfeiture, it will issue a formal Forfeiture Order. 47 C.F.R. § 1.80(f)(4).

In determining the amount of the penalty, the FCC must take into account "the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, and history of prior offenses, [and] ability to pay . . . ." 47 U.S.C. § 503(b)(2)(E); *see also In the Matter of the Commission's Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines*, 12 FCC Rcd. 17087 (1997)("*Forfeiture Policy Statement*"), *reconsid. denied*, 15 FCC Rcd. 303 (1999). In general, if a party refuses to pay a forfeiture, it is recoverable in a civil suit brought by the United States in the federal district court by a trial *de novo*. 47 U.S.C. § 504(a).

### III.  STATEMENT OF FACTS

#### a.  Defendant's Violations

At all times relevant to the Complaint in this case, Defendant Neely was the licensee of radio station WLTC(AM), Gastonia, North Carolina.[1] During April 2003, WLTC(AM) was authorized by the FCC to operate on the frequency 1370 kHz with a power of 12 kilowatts during the day and at various lower power levels after sunset (8:00 p.m. to 8:30 p.m. EDT—500 watts; 8:30 p.m. to 9:00 p.m. EDT—262.3 watts; 9:00 p.m. to 10:00 p.m. EDT—164.7 watts; after 10:00 p.m.—30 watts).[2]

On April 22, 2003, in response to information alleging overpower operation by Neely's WLTC(AM), an agent of the FCC monitored WLTC(AM)'s signal. Field strength measurements revealed that WLTC(AM) did not reduce its transmitter power at sunset as required by the station authorization, but instead remained at daytime power until 8:16 p.m. EDT, past the local sunset time for April 22nd of 8:00 p.m. EDT. On April 23, 2003, an agent of the FCC again monitored WLTC(AM)'s signal and found that the station again did not reduce its transmitter power at sunset as required by its authorization, but rather stayed at its daytime power for more than an hour beyond the 8:00 p.m. local sunset time. NAL ¶¶ 3–4. On April 24, 2003, an agent of the FCC inspected WLTC(AM)'s transmitter site during daytime hours. The agent observed that the station's transmitter exceeded the authorized operating power by more than 20% in daytime mode and by more than 2000% in nighttime mode. NAL ¶ 5.b

#### b.  Administrative Proceedings Leading To The Forfeiture

On July 16, 2003 the FCC's Enforcement Bureau issued a Notice of Apparent Liability for Forfeiture to Neely in the amount of $4,000, for the alleged repeated

---

1. Effective Sept. 16, 2005, the station's call sign was changed to WGIV (AM), and its community of license subsequently was changed to Pineville, N.C. Defendant remains the licensee of the station.

2. *See Frank Neely*, Notice of Apparent Liability for Forfeiture, NAL/Acct. No. 200332640007 ¶ 2 (Enf. Bur., Norfolk Office, released July 16, 2003) ("*NAL*"). The transmitter power requirements and the monthly times of local sunrise and sunset are specified in the station's license for stations such as WLTC(AM) that operate pursuant to post-sunset authority. *See* 47 C.F.R. 73.14.

violations of Section 73.1745(a) of the agency's rules, 47 C.F.R. § 73.1745(a), based on the overpowered operations observed on April 22, 23, and 24, 2003.[3] In his response to the NAL, Neely did not dispute that his radio station, WLTC(AM), operated with excessive power on the dates specified, but opposed the NAL, asserting he had set up procedures to prevent the reoccurrence of the violation and that he had a history of overall compliance with the Commission's Rules. In addition, Neely claimed that he was financially unable to pay the forfeiture.

On August 23, 2004, the Commission, again acting through the Bureau, issued an order finding Neely liable in the amount of $4,000 for repeated violation of Section 73.1745(a). *Frank Neely*, Forfeiture Order, 19 FCC Rcd. 16135 (EB 2004). In that order, the agency's Enforcement Bureau found that Neely's corrective efforts were insufficient to cancel or to reduce the forfeiture. *Id.* at 16135 ¶ 3.

The Bureau also rejected Neely's claim that he had no history of violation of FCC rules. The Bureau noted that a separate forfeiture notice had been issued to Neely for violation of different rules between 1998 and 2003. *Id.* Further, the Bureau found that the proposed forfeiture amount was a very small percentage of the gross revenues of Rejoice, Inc. ("Rejoice"), the company through which Neely operates WLTC(AM), although Neely holds the license in his own name. The Bureau thus held that cancellation or reduction of the proposed forfeiture was not warranted based on the financial information provided. *Id.*

On September 9, 2004, Neely filed a petition for reconsideration of the Forfeiture Order. He argued that the company financial information submitted with his response to the NAL supported his request for reduction or elimination of the forfeiture based upon an inability to pay. On January 31, 2007, the Bureau denied Neely's petition for reconsideration. *Frank Neely*, Memorandum Opinion and Order, 22 FCC Rcd. 1434, 2007 WL 268615 (EB 2007) ("MO & O"). The Bureau noted that under the FCC's Forfeiture Policy Statement, the agency will consider reduction or cancellation of a forfeiture in response to a claim of inability to pay where a petitioner submits (1) federal tax returns for the most recent three-year period; (2) financial statements prepared according to generally accepted accounting practices; or (3) some other reliable and objective documentation that accurately reflects the petitioner's current financial status.[4] The Bureau observed that "Neely, the licensee of WLTC, and the person whom the Bureau found liable for the violations herein and the forfeiture, has not provided any financial information in support of his own individual inability to pay the forfeiture. Instead, Mr. Neely argues only that his company Rejoice has an inability to pay." 22 FCC Rcd. at 1435. Because Neely had failed to submit any information relating to his personal inability to pay, the Bureau held that he had "failed to make the requisite showing that he has an inability to pay the forfeiture." *Id.* at 1436. In addition, the Bureau re-examined the financial information concerning Rejoice and conclud-

---

**3.** *Frank Neely*, Notice of Apparent Liability for Forfeiture, NAL/Acct. No. 200332640007 (Enf. Bur., Norfolk Office, released July 16, 2003). Section 73.1745(a) provides that "[n]o broadcast station shall operate at times or with modes or power other than those speci-

fied and made a part of the license, unless otherwise provided in this part."

**4.** *See Forfeiture Policy Statement*, 12 FCC Rcd. at 17100; 47 C.F.R. § 1.80(b)(4), Note Section II. Adjustment Criteria for Section 503 Forfeitures.

ed that "considering the information on Rejoice in the light most favorable to Mr. Neely, we find that this information also does not demonstrate an inability to pay the forfeiture." *Id.*

### c. Proceedings Before This Court

When Neely failed to pay the forfeiture, the United States filed this action pursuant to 47 U.S.C. § 504(a), seeking judgment in the amount of the forfeiture, together with interest and costs. In his answer, Neely admitted all factual allegations establishing repeated violation of the FCC's regulation limiting the radio station's nighttime transmitter power, but claimed he did not have to pay the forfeiture because the FCC has not established policy under the Small Business Regulatory Enforcement Act of 1996 with respect to the application of civil penalties to small entities. Both the United States and Neely filed motions for summary judgment. The Court heard oral argument on the motions on October 7, 2008. The Court granted to defendant the opportunity to supplement his record with documentation of his personal financial ability for this Court's consideration, but Neely never filed any supplemental material.

### IV. STANDARD OF REVIEW

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves").

Summary judgment is appropriate where there is "no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Hunt v. Cromartie,* 526 U.S. 541, 549, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999); see *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202; F.R.C.P. Rule 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). "In determining whether a material factual dispute exists, the Court views the evidence through the prism of the controlling legal standard." *Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993).

### V. DISCUSSION

### a. The Undisputed Facts Show That Neely's Station Violated The FCC Regulation.

In his answer to the Complaint as well as in his Motion for Summary Judgment, Neely admitted all of the factual allegations that establish repeated violation of the FCC's rule that is the basis for the forfeiture sought to be enforced in this case. See Answer at ¶ 1; Def. SJ Mot. at 1. Accordingly, this Court finds that Neely's radio station violated on multiple occasions the regulation regarding exceeding the authorized operating power.

### b. The Forfeiture Amount Is Reasonable.

Section 503(b)(2)(A) of the Communications Act, 47 U.S.C. 503(b)(2)(A), author-

izes the FCC to assess forfeitures against a broadcast station licensee for willful or repeated failure to comply with the terms of its license or with the Act or agency rules in an amount not to exceed $25,000 for each violation or each day of a continuing violation and not to exceed a total of $250,000 for any single act or failure to act.[5] The FCC has established guidelines for assessing forfeitures that include base amounts for specific violations. For exceeding transmitter power limits, the base forfeiture amount is $4,000. *See* 47 C.F.R. 1.80(b)(4) Note. The Court finds that the $4,000 forfeiture assessed against Neely for multiple violations is within the agency's guidelines and reasonable on its face. The Court also finds that Neely has never claimed that the forfeiture amount was unreasonable in terms of the violations to which he has admitted. The Court notes that in none of defendant's pleadings before this Court does he claim inability to pay the $4000 forfeiture, and further, his failure to submit personal financial information to the Court rendered this Court unable to make a finding regarding his financial ability to pay.

**c. The Small Business Regulatory Enforcement And Fairness Act Of 1996 Does Not Require Reduction Of The Forfeiture In This Case.**

■ Neely concedes in his summary judgment motion that his "defense is predicated entirely upon" his claim that the FCC cannot enforce the assessed forfei-

ture against him because the "FCC has not established a policy or program … to provide for the reduction, and under appropriate circumstances for the waiver, of civil penalties for violations of a statutory or regulatory requirement by a small entity", as required by SBREFA.[6] Def. SJ Mot. at 2; see also *Answer* ¶ 7. After considering the motions, memorandums, exhibits and arguments in this case, this Court finds that Neely's claim, after considering the facts in this case, is baseless, in that the FCC encompassed the spirit of SBREFA in the mitigation factors set out in its amended *Forfeiture Policy Statement* and applied them as required to Neely. Moreover, with respect to Neely's contention that the FCC's *Forfeiture Policy Statement* and its rules establishing forfeiture guidelines are generally unlawful for failure to implement SBREFA, the Court finds that his claim is outside the Court's jurisdiction.

The FCC set forth its forfeiture policies and practices, including its treatment of small businesses pursuant to SBREFA, when it amended Section 1.80 of its rules in 1997, through a rulemaking proceeding open to public participation. *See Forfeiture Policy Statement,* 12 FCC Rcd. 17087 (1997), *reconsid. denied,* 15 FCC Rcd. 303 (1999). Section 503 of the Communications Act, 47 U.S.C. § 503, Section 1.80 of the FCC rules, 47 C.F.R. § 1.80, and the *Forfeiture Policy Statement,* which together provide the basis for the forfeiture issued by the FCC, include mitigation fac-

---

**5.** The cited amounts were applicable at the time the *Forfeiture Order* was adopted in this matter. Pursuant to 28 U.S.C. § 2461, which requires federal agencies to adjust maximum statutory civil monetary penalties periodically to account for inflation, the Commission increased the maximum forfeiture penalties in 2004 to $32,500/$325,000. *See Inflation Adjustment of Maximum Forfeiture Penalties,* 19 FCC Rcd. 10945 (2004), 69 Fed.Reg. 47788 (Aug. 6, 2004). The Commission recently

adopted an order increasing the maximum amounts to $37,500/$375,000. *See Adjustment of Forfeiture Maxima to Reflect Inflation,* FCC 08–154 (June 13, 2008).

**6.** "SBREFA" is the Small Business Regulatory Enforcement Fairness Act of 1996, Pub.L. No. 104–12, § 223, 110 Stat. 847, 862 (1996), 5 U.S.C. § 601 Note.

tors that mirror those set forth in SBRE-FA.[7] In the *Forfeiture Policy Statement* quoted below, the FCC expressly acknowledges the requirements imposed by SBREFA and explains how its policies comply with Section 223 of SBREFA:

> *We note that Section 223 of the recently enacted Small Business Regulatory Enforcement Fairness Act of 1996 (SBREFA), enacted as part of the Contract with America Advancement Act of 1996, Pub.L. No. 104–121, 110 Stat. 847 (1996), requires agencies to establish a policy providing for the reduction and, under appropriate circumstances, the waiver of civil penalties imposed on small entities. As part of this policy, under appropriate circumstances, the agency may consider ability to pay in determining penalty assessments on small entities. Such circumstances may include, among others, violations discovered because the small entity participated in a compliance assistance or audit programs, and good faith efforts demonstrated by the entity to comply with the law. Circumstances that may be excluded from the policy's applicability cover small entities that have been subject to multiple enforcement actions, willful or criminal violations, and violations that pose serious health, safety or environmental threats.*
>
> *Our existing policies, as reflected in our precedent, and as retained here, comply with Section 223 of SBREFA. Warnings, rather than forfeitures, may continue to be appropriate in particular cases involving small businesses or others. See par. 31, supra. Under Section 503(b)(2)(D) of the Communications Act and section 1.80(b)(4) of our rules, we will continue to consider inability to pay a relevant factor in assessing forfeitures. See par. 44, supra, See also Appendix A, Section II, downward adjustment criterion (4). Our other upward and downward adjustment factors, which are reflective of existing policy, encompass many of the conditions and exclusions listed and Section 223 of SBREFA. See Appendix A, Section II. These factors will continue to be applied in cases of violations involving small entities (as well as others) to determine whether a waiver or reduction of forfeiture is warranted.*

*12 FCC Rcd. at 17109 ¶¶ 51–52*

Although Neely claims that the agency must adopt a new policy to implement SBREFA and cannot rely on an existing policy even if such policy complies with the relevant SBREFA requirements, his argu-

---

7. The Communications Act provides that "[i]n determining the amount of such a forfeiture penalty, the Commission or its designee shall take into account the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require." 47 U.S.C. § 503(b)(2)(E); *see also* 47 C.F.R. § 1.80(a)(4). SBREFA states that: "Subject to the requirements or limitations of other statutes, policies or programs established under this section shall contain conditions or exclusions which may include, but shall not be limited to—(1) requiring the small entity to correct the violation within a reasonable correction period; (2) limiting the applicability to violations discovered through the participation by the small entity in a compliance assistance or audit program operated or supported by the agency or a State; (3) excluding small entities that have been subject to multiple enforcement actions by the agency; (4) excluding violations involving willful or criminal conduct; (5) excluding violations that pose serious health, safety or environmental threats; and (6) requiring a good faith effort to comply with the law." Pub.L. No. 104–121, § 223, 110 Stat. at 862, 5 U.S.C. 601 Note.

ment is unsupported by citation to statutory language, legislative history or case law. This Court finds the FCC has acknowledged the requirements of SBREFA in its *Forfeiture Policy Statement* and that, in this case, its forfeiture policy and procedure complied with those requirements as applied to Neely.

■ To the extent that Neely contends that the *Forfeiture Policy Statement* and the FCC's implementing regulations are generally inadequate to implement the SBREFA, this Court has no jurisdiction over that claim. District court jurisdiction over an action to recover an unpaid forfeiture pursuant to Section 504 does not include the power to entertain challenges, raised in defense of a forfeiture recovery action, to the validity of an underlying FCC regulation. The Communications Act confines judicial review of a challenge to FCC regulations to the courts of appeals. *See* 47 U.S.C. § 402(a); 28 U.S.C. 2342(1). The Supreme Court long ago held that "the Commission's promulgation of [its] regulations is an order reviewable under [47 U.S.C] 402(a)." *Columbia Broad. Sys., Inc. v. United States,* 316 U.S. 407, 425, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942). As the Eighth Circuit has concluded, "[i]t is hard to think of clearer language [than the cited statutes] confining the review of regulations to the Courts of Appeal[s]." *United States v. Any and all Radio Station Transmission Equipment*

*(Fried),* 207 F.3d 458 (8th Cir.2000), *cert. denied,* 531 U.S. 1071, 121 S.Ct. 761, 148 L.Ed.2d 663 (2001).

The Supreme Court has held that the exclusive jurisdiction of the courts of appeals over FCC rulemaking may not be evaded by seeking to enjoin a final order of the FCC in the district court. *See FCC v. ITT World Communications, Inc.,* 466 U.S. 463, 468, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984). And as the Eighth Circuit has held, "[a] defensive attack on the FCC regulations is as much an evasion of the exclusive jurisdiction of the Court of Appeals as is a preemptive strike by seeking an injunction." *Fried,* 207 F.3d at 463; *see also United States v. Dunifer,* 219 F.3d 1004, 1007 (9th Cir.2000). Such "defensive attack[s]" are not permitted even during a "trial de novo," *United States v. Travel-Centers of America,* No. CV. 06–1850–AS, 2007 WL 2994594, at *3–*4 (D.Or. Oct. 10, 2007), which allows for judicial review of the Commission's factual determinations (without deference) but not its regulations. Therefore, insofar as Neely claims that the Commission's forfeiture policy and rules are unlawful because the agency has not properly implemented SBREFA, the only "appropriate procedure for obtaining judicial review of the agency's [regulatory actions] was appeal to the Court of Appeals as provided by statute." *ITT,* 466 U.S. at 468, 104 S.Ct. 1936.[8]

8. Courts of appeals lack jurisdiction to review unpaid forfeiture orders. *Pleasant Broadcasting Co. v. FCC,* 564 F.2d 496 (D.C.Cir.1977). However, courts of appeals have been held to have jurisdiction to review paid forfeiture orders. *AT & T Corp. v. FCC,* 323 F.3d 1081 (D.C.Cir.2003). Thus Neely could have paid the forfeiture and sought review in a court of appeals where he could have raised his general challenge to the agency's implementation of SBREFA. (If he had taken this route and prevailed, the forfeiture payment would have been returned to him.) He also could have

sought a declaratory ruling from the Commission or petitioned the agency to amend its rules. *See* 47 C.F.R. §§ 1.2, 1.401. If the Commission's action on those requests had aggrieved Neely, he could have sought review of such action in a court of appeals pursuant to 47 U.S.C. 402(a) and 28 U.S.C. 2342(1). *See ITT,* 466 U.S. at 468, 104 S.Ct. 1936; *Office of Communication of the United Church of Christ v. FCC,* 911 F.2d 813, 816 (D.C.Cir. 1990); *Geller v. FCC,* 610 F.2d 973 (D.C.Cir. 1979).

As stated previously, however, this Court finds that Neely's claim that the FCC cannot enforce the forfeiture in his case because it has not properly implemented SBREFA is incorrect. As noted above, the FCC's *Forfeiture Policy Statement* established procedures and guidelines through which the agency may consider whether small entities have the ability to pay a particular forfeiture amount or the ability to submit the same kind of documentation as larger entities to corroborate their inability to pay. *Id.* at 17107, ¶ 44. The other upward and downward adjustment factors that the FCC considers also encompass many of the conditions listed in Section 223 of SBREFA. *See id.;* 47 U.S.C. § 503(b)(2)(D); 47 C.F.R. § 1.80(b)(4). *See also* Appendix A, Section II of the *Forfeiture Policy Statement:* "These factors will continue to be applied in cases of violations involving small entities (as well as others) to determine whether a waiver or reduction of forfeiture is warranted." 12 FCC Rcd. at 17109, ¶ 52. The Final Regulatory Flexibility Analysis (FRFA) of the *Forfeiture Policy Statement* (Appendix C) reiterates that the flexibility to review the totality of circumstances, as reflected in precedent and retained by the FCC in its forfeiture guidelines, comports with SBREFA.[9] The FCC's policy also takes into account some of the SBREFA exclusion factors such as multiple enforcement actions and willful and criminal conduct. *Id.* at 17109, ¶ 51. The aforementioned FCC decisions, statements, and analyses represent a sound interpretation of the law and have been publicly available since their release more than a decade ago.

It is noteworthy that during the administrative proceedings, neither in his response to the *NAL* nor in his petition for reconsideration of the forfeiture order did Neely, who was represented by counsel in the filing of both pleadings, make any reference to SBREFA or claim that he was a small business within the meaning of SBREFA. In any event, SBREFA does not require that a forfeiture issued to a small business be automatically waived or reduced. To the contrary, SBREFA provides that a small business entity *may* be excluded from consideration for waiver or reduction of forfeiture for a number of reasons, including "multiple enforcement actions" taken against it by an agency.[10] That exclusion applies here. The record in this case shows that the FCC's Media Bureau issued a *Notice of Apparent Liability* to Neely on June 28, 2004, for rule violations relating to the station's public file that occurred at his station WLTC(AM) from April 1998 through early 2003.[11] As the *Forfeiture Order* in the

9. As required by Section 603 of the Regulatory Flexibility Act (RFA), 5 U.S.C. § 603, the Commission prepared an Initial Regulatory Flexibility Analysis (IRFA) that was incorporated in the Notice of Proposed Rule Making for the Commission's Forfeiture Policy Statement. *In the Matter of the Commission's Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines,* 10 FCC Rcd. 2945, 1995 WL 170696 (1995) (NPRM). Based on the analysis of the public comments, the Commission prepared a Final Regulatory Flexibility Analysis (FRFA) of the expected impact of the Report and Order on small businesses and entities. The FRFA in the *Forfeiture Policy Statement* conforms to the RFA, as amended by the Contract with America Advancement Act of 1996, Pub.L. No. 104–121, 110 Stat. 847 (1996). *See* 10 FCC Rcd. at 2946, 12 FCC Rcd. at 17119.

10. *See* n. 3, *supra,* citing § 223(b)(3) of the SBREFA, excluding from the scope of the statute "small entities that have been subject to multiple enforcement actions by the agency."

11. *Letter to David Tillotson from Peter Doyle, Chief Audio Division, Media Bureau,* 19 FCC Rcd. 11230 (MB 2004)(Government's Exhibit E).

present case noted, "Mr. Neely's claim that his station has a history of overall compliance with the FCC's rules is belied by his own certification that station WLTC did not meet the FCC's public inspection file requirements." In the *Forfeiture Order* in this case, the Enforcement Bureau cited this prior enforcement action taken against Neely's station, WLTC(AM), in rejecting Neely's claim that he had a history of overall compliance with the FCC's Rules.[12] Given this enforcement action, there are sufficient grounds under Section 223(b)(3) of SBREFA upon which to conclude that Neely is precluded from obtaining any relief under Section 223(a) of SBREFA.

Moreover, even if a business entity meets the SBREFA criteria and no exclusion applies, SBREFA does not require automatic waiver or reduction of a civil penalty but rather authorizes the agency "to consider ability to pay in determining penalty assessments on small entities."[13] In denying Neely's Petition for Reconsideration of the $4,000 forfeiture amount, the FCC's Enforcement Bureau rejected his unsubstantiated claim[14] that he was "financially unable to pay the [$4,000] forfeiture."[15] Neely is the licensee of station WLTC(AM), and the forfeiture order was directed to him personally as the licensee. As the Bureau pointed out in the Reconsideration Order, Neely provided no information to the Commission to support any claim that he personally was financially unable to pay the forfeiture. Further, as noted previously in this Order, this Court gave Neely an additional opportunity to submit personal financial documents for consideration, but he failed to do so.

Insofar as Neely providing financial information relating to the station's operating company Rejoice's ability to pay the forfeiture, this Court finds the FCC properly concluded, to the extent the information was relevant, that Neely's showing as to Rejoice was inadequate to justify a reduction or cancellation of the forfeiture. *See Memorandum Opinion and Order,* 22 FCC Rcd. at 1436–37 ¶¶ 8–11.[16]

## VI. CONCLUSION

In light of the above analysis, the Court finds there are no issues as to material facts and grants Summary Judgment for the United States with regard to the unpaid forfeiture and orders judgment in favor of the government in the amount of $4000, plus interest and costs. The Court further directs Neely to pay this judgment immediately, together with interest and costs, to the United States Department of Justice, 1441 Main Street, Suite 500, Columbia, S.C. 29201.

With regard to the Defendant's Motion for Summary Judgment, the Court concludes the issue presented is a legal one and inappropriate for disposition in this Court in a Motion for Summary Judgment.

12. *Forfeiture Order,* 19 FCC Rcd. 16135.

13. *See* § 223(a) of SBREFA.

14. *See Memorandum Opinion and Order,* 22 FCC Rcd. at 1434 ¶ 7 ("Mr. Neely, the licensee of WLTC, and the person whom the Bureau found liable for the violations herein and the forfeiture, has not provided any financial information in support of his own individual inability to pay the forfeiture.").

15. *Forfeiture Order,* 19 FCC Rcd. 16135.

16. By contrast, in *Sandra J. Gizzo,* 15 FCC Rcd. 23273 (Enf.Bur.2000), the FCC's Enforcement Bureau reduced a forfeiture from $4,000 to $2,000 because the licensee demonstrated (by submitting her personal income tax returns) that she could not afford to pay the original forfeiture amount. Neely did not qualify for any such relief here because he failed to produce any evidence that he personally lacked the funds to pay the forfeiture.

Defendant's Motion is therefore dismissed for lack of jurisdiction.

IT IS SO ORDERED.