(Slip Opinion) OCTOBER TERM, 2025 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## FEDERAL COMMUNICATIONS COMMISSION, ET AL. *v.* AT&T, INC.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 25–406.  Argued April 21, 2026—Decided June 4, 2026*

The Communications Act of 1934, as amended, authorizes the Federal Communications Commission to investigate regulated parties for suspected violations of the communications laws and to seek monetary forfeitures for violations of those laws.  47 U. S. C. §503(b).  In these cases, the Commission investigated cellular service providers AT&T and Verizon (collectively, the carriers) regarding their treatment of customer location data.  Believing that the carriers had violated laws and regulations requiring them to take reasonable steps to keep location data confidential, the FCC sought forfeitures from the carriers.  The Commission first issued the carriers notices of apparent liability under §503(b)(4), which specified the factual and legal bases for the forfeitures the Commission sought.  After reviewing the carriers' responses, the Commission "determined" that the carriers were liable and "assessed" penalties of roughly $57 million against AT&T and $47 million against Verizon.  §§503(b)(1), (b)(2)(E).

Once the Commission issues an order, the recipient has two options.  First, it may seek review in the court of appeals under the Hobbs Act.  See 28 U. S. C. §2342(1).  The court of appeals, sitting without a jury, then reviews the order on the administrative record under the standards set forth in the Administrative Procedure Act.  47 U. S. C. §402(a);

———————

*Together with No. 25–567, *Verizon Communications, Inc.* v. *Federal Communications Commission, et al.*, on certiorari to the United States Court of Appeals for the Second Circuit.

28 U. S. C. §2347(a); 5 U. S. C. §551 *et seq.*, and §701 *et seq.* The recipient may also opt to do nothing. In the event of nonpayment of a forfeiture penalty "determined under [§503(b)(4)]," the penalty "shall be recoverable . . . in a civil suit in the name of the United States." 47 U. S. C. §504(a). The Commission may then refer the matter to the Department of Justice, which in turn may—but need not—bring a civil suit within five years of the issuance of the order. 28 U. S. C. §2462. That suit "shall be a trial de novo." 47 U. S. C. §504(a). The regulated party may, of course, pay the forfeiture voluntarily. But until it does, or the court in a §504 enforcement action orders payment, the Commission may not use the "notice of apparent liability . . . to the prejudice of" the party in other Commission proceedings. §504(c).

Here, the carriers paid their penalties and filed petitions for review in their respective Courts of Appeals. They argued that requiring forfeiture without the opportunity for a jury trial violates the Seventh Amendment. The Fifth Circuit granted AT&T's petition for review and vacated the Commission's order. The court held that the FCC's enforcement procedures violate the Seventh Amendment because by the time the Commission issues a forfeiture order, it "has already found the facts, interpreted the law, adjudged guilt, and levied punishment"—all without the involvement of a jury. 149 F. 4th 491, 503. The Second Circuit denied Verizon's petition for review on the ground that the FCC's forfeiture order did not itself compel payment; the Department of Justice "needs to initiate a collection action" under §504 before the carrier can be made to pay. 156 F. 4th 86, 106. The court thus held that the Commission does not violate the Seventh Amendment when it issues forfeiture orders without a jury. See *id.*, at 107. This Court granted certiorari as to both decisions to resolve the conflict.

*Held*: Because forfeiture orders issued under §503(b)(4) do not definitively resolve the parties' legal obligations, and the FCC's factual findings in its forfeiture proceedings are not conclusive, it does not violate the Seventh Amendment for the Commission to issue forfeiture orders without the involvement of a jury. Pp. 6–14.

(a) The FCC's forfeiture proceedings fit comfortably within the Court's Seventh Amendment precedents. The Seventh Amendment "preserve[s]" the right to trial by jury in "Suits at common law," and applies in all proceedings in which "legal rights" are to be "settle[d]," *Parsons* v. *Bedford*, 3 Pet. 433, 447. It does not, however, "prescribe at what stage" of a legal dispute "a trial by jury must, if demanded, be had." *Capital Traction Co.* v. *Hof*, 174 U. S. 1, 23. The Amendment requires only that, before legal rights and obligations are conclusively "ascertained and determined," *Parsons*, 3 Pet., at 447, a party has the chance to insist that a jury make the "ultimate determination of issues of fact," *Ex parte Peterson*, 253 U. S. 300, 310. Consistent with these

principles, this Court has upheld nonjury adjudications making initial findings of fact that are subject to *de novo* review in a subsequent jury trial. See, *e.g.*, *Meeker* v. *Lehigh Valley R. Co.*, 236 U. S. 412; *Peterson*, 253 U. S., at 310. Given the similar features of the Commission's enforcement scheme, the Commission may issue forfeiture orders without the involvement of a jury.

The forfeiture orders at issue in these cases did not settle the carriers' legal obligations because they did not create an obligation to pay. The statute nowhere gives the Commission the authority to execute on a forfeiture order; a recipient of a forfeiture order incurs no penalties for nonpayment; interest does not accrue on the sum; and under §504(c) the Commission cannot hold "the existence of a notice of liability or an order of forfeiture" against a regulated party "unless the forfeiture has been paid or a court" has ordered payment. *Pleasant Broadcasting Co.* v. *FCC*, 564 F. 2d 496, 500 (CADC); see also 15 FCC Rcd. 303, 304. The statute thus prevents the Commission from penalizing a party for failing to act in response to the mere existence of a forfeiture order, which in turn suggests that the party need not comply in the first place.

The orders also did not reflect the ultimate determination of any fact. The statute provides that forfeitures under §503(b)(4) "shall be recoverable," exclusively, in a "trial de novo." §504(a). Thus, for the purpose of a §504 trial—the only means by which the Government can collect a penalty—it is as if the Commission never found any facts at all. Before a regulated party can be made to pay, the jury gets the last word. Pp. 6–9.

(b) The carriers insist that they actually *must* pay because §503 uses words that sound mandatory—the Commission "determine[s]" whether a forfeiture is appropriate, "assesse[s]" the "amount" of such a penalty, and "impose[s]" that penalty. §§503(b)(1), (b)(2)(E), (b)(4). But the proper understanding of such statutory terms depends on "their place in the overall statutory scheme." *Turkiye Halk Bankasi A.S.* v. *United States*, 598 U. S. 264, 275 (internal quotation marks omitted). And under the statute at issue here, the Commission is powerless to visit any adverse consequences on a regulated party who receives a forfeiture order.

*SEC* v. *Jarkesy*, 603 U. S. 109, proves the point. In *Jarkesy*, the Court held that the Securities and Exchange Commission (SEC) could not impose civil penalties using its in-house administrative process. Those penalties were immediately enforceable; the SEC could garnish the recipient's wages or deduct a portion of the forfeiture from his tax return. See 17 CFR §§204.50, 204.52, 204.54–204.56, 204.60–204.65. And if the SEC were required to resort to judicial means of enforcement, no jury was available—at least as to the underlying legal

violation.  See 15 U. S. C. §78u(e); see, *e.g.*, *SEC* v. *Gerasimowicz*, 9 F. Supp. 3d 378, 381–382 (SDNY).  That means that, unlike here, the ultimate determination of the facts giving rise to the obligation to pay rested with the agency alone.

The carriers argue that even if the Commission's orders do not require payment, the Seventh Amendment nonetheless applies because forfeiture orders have legal *effect*—namely, they enable the Department of Justice to initiate a §504 suit.  But the Seventh Amendment "secure[s] a right to the individual," *Parsons* v. *Armor*, 3 Pet. 413, 425, that attaches when "legal rights" are to be "determined," *Lorillard* v. *Pons*, 434 U. S. 575, 583.  A forfeiture order under 47 U. S. C. §503(b)(4) does not determine legal rights; it is simply a "prerequisite[ ] to suit" that must be met before the Department may bring a collection action.  The Seventh Amendment does not extend to such "preliminary" procedures.  *Peterson*, 253 U. S., at 310.

Finally, the carriers argue that FCC forfeiture orders cause reputational and practical harms entitling them to a jury, "even where no money is at stake."  Brief for AT&T, Inc., et al. 35–36.  This argument is hard to square with the text of the Seventh Amendment, and in any event proves too much.  Reputational harm may befall any party in the preliminary stage of a legal proceeding, yet this has never been thought to pose a Seventh Amendment problem.  Pp. 9–11.

(c) The Court's unconstitutional conditions doctrine—which "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up," *Koontz* v. *St. Johns River Water Management Dist.*, 570 U. S. 595, 604—is a poor fit for this case.  The Seventh Amendment applies only to "[s]uits," and the only suit in the statutory scheme is a §504 enforcement action.  If the carriers elect not to pay and await an enforcement action, and the Department of Justice decides never to bring one, then the carriers' jury right does not attach.

The carriers argue that if they insist upon their jury right and wait for an enforcement suit, the Commission will use the existence of the order and the fact of nonpayment against them.  But §504(c) prohibits the Commission from using unresolved forfeiture proceedings to a regulated party's prejudice in subsequent Commission proceedings.  While the Commission may consider the facts *underlying* the unresolved forfeiture in a future proceeding, see 12 FCC Rcd. 17087, 17103, the regulated party will have a chance to contest those facts anew.  And before any asserted fact can be used to support a binding order to pay, the Government must prove it to a jury.  Finally, the carriers contend that the risk of reputational harm unduly burdens their jury right, but the uncertain prospect of such harm does not improperly "discourag[e] the exercise" of that right.  *Chaffin* v. *Stynchcombe*, 412 U. S. 17, 30.  Pp. 12–14.

Syllabus

No. 25–406, 149 F. 4th 491, reversed and remanded; No. 25–567, 156 F. 4th 86, affirmed.

ROBERTS, C. J., delivered the opinion of the Court, in which ALITO, SOTOMAYOR, KAGAN, GORSUCH, KAVANAUGH, BARRETT, and JACKSON, JJ., joined. THOMAS, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

———————

Nos. 25–406 and 25–567

———————

FEDERAL COMMUNICATIONS COMMISSION, ET AL., PETITIONERS

25–406          *v.*

AT&T, INC.

*ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT*

VERIZON COMMUNICATIONS, INC., PETITIONER

25–567          *v.*

FEDERAL COMMUNICATIONS COMMISSION, ET AL.

*ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT*

[June 4, 2026]

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

The Communications Act authorizes the Federal Communications Commission to investigate regulated parties for suspected violations of the communications laws. The Commission does so in an administrative process in which no jury is available. But before the Government can collect a penalty, it must prove its case to a jury in a trial *de novo*. We decide whether that enforcement structure violates the Seventh Amendment, which provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."

# I

## A

The Communications Act of 1934 established the Federal Communications Commission. Ch. 652, 48 Stat. 1064. The Act empowers the Commission to regulate "communication by wire and radio," and tasks it with making effective "wire and radio communication service" available nationwide at reasonable cost. *Ibid.* Today, the Commission oversees electronic communications in contexts ranging from satellites to smart phones.

As amended, the Act authorizes the Commission to seek monetary forfeitures for violations of the communications laws. An entity which the Commission "determine[s]" has "willfully or repeatedly failed to comply" with those laws or the Commission's rules "shall be liable to the United States for a forfeiture penalty." 47 U. S. C. §503(b). The Commission can choose between two paths to seek forfeitures.

The first path is a formal adjudication. See §503(b)(3); 5 U. S. C. §554. An administrative law judge (or the Commission itself) holds a hearing and may impose a penalty, with limited judicial review in the court of appeals only. 47 U. S. C. §503(b)(3)(A). In practice, the Commission does not use this process.

The second path—the one relevant here—is a more informal proceeding. See §503(b)(4). The Commission first issues a "notice of apparent liability." §503(b)(4)(A). The notice must specify the laws or regulations the Commission suspects the recipient to have violated, and the factual basis for those allegations. §503(b)(4). The Commission must give the recipient the chance to "show, in writing," "why no such forfeiture penalty should be imposed." §503(b)(4)(C). After reviewing the recipient's response, the Commission then issues an order that "determine[s]" whether the recipient is liable and, if so, "assesse[s]" a penalty. §§503(b)(1), (b)(2)(E).

Once the Commission issues an order, the recipient has two options.  First, it may seek review in the court of appeals under the Hobbs Act.  See 28 U. S. C. §2342(1).  The court of appeals, sitting without a jury, then reviews the order on the administrative record under the standards set forth in the Administrative Procedure Act.  47 U. S. C. §402(a); 28 U. S. C. §2347(a); 5 U. S. C. §551 *et seq.*, and §701 *et seq.*

The recipient's other option is to do nothing.  See *Action for Children's Television* v. *FCC*, 59 F. 3d 1249, 1261 (CADC 1995).  In the event of nonpayment of a forfeiture penalty "determined under [§503(b)(4)]," the penalty "shall be recoverable . . . in a civil suit in the name of the United States."  47 U. S. C. §504(a).  The Commission thus may refer the matter to the Department of Justice, which then may—but need not—bring a civil suit within five years of the issuance of the order.  See *ibid.*; 28 U. S. C. §2462.  That suit "shall be a trial de novo."  47 U. S. C. §504(a).

Absent a successful enforcement suit (and resulting court order), the statute provides no other mechanism for the Commission to collect the forfeiture.  The regulated party may, of course, pay the forfeiture voluntarily.  But until it does, or the court in a §504 enforcement action orders payment, the Commission may not use the "notice of apparent liability . . . to the prejudice of" the party in other Commission proceedings.  §504(c).

B

AT&T and Verizon (collectively, the carriers) are cellular service providers.  Cellular service allows customers, using cell phones connected to the carriers' networks, to talk, text, and exchange data with one another.  To receive cellular service, the phone must periodically connect to—or "ping"—the nearest cell site in the carrier's network.  See *Carpenter* v. *United States*, 585 U. S. 296, 300–301 (2018).  Every ping registers the phone's location.  See *ibid.*  Carriers know the

locations of their cell sites, so they can be reasonably confident about the location of any given customer's cell phone at any given time. See *id.*, at 301. And because cell phones are generally with their owners—almost as "feature[s] of human anatomy"—the carriers in turn have a good sense of where their customers are located. *Id.*, at 311 (quoting *Riley* v. *California*, 573 U. S. 373, 385 (2014)).

Location data, by its nature, implicates serious privacy concerns. See *Carpenter*, 585 U. S., at 311, 315. But it can also provide significant benefits. For example, some companies provide location-based services. These services, like roadside assistance, require accurate location information; a tow truck is not much good if it cannot find the broken-down car. Access to location data thus enhances the quality of the providers' service.

Until 2019, the carriers operated location-based services programs. See 156 F. 4th 86, 92 (CA2 2025); 149 F. 4th 491, 495–496 (CA5 2025). Under those programs, the carriers sold users' location data (through intermediaries) to service providers, who used the data to deliver location-based services. See 156 F. 4th, at 92; 149 F. 4th, at 496.

In 2018, however, news reports revealed security breaches in the carriers' location-based services programs. 156 F. 4th, at 93; 149 F. 4th, at 496. One high-profile incident involved a provider called Securus. Securus provided location-finding services to law enforcement officers, who in theory were required to upload legal authorization, like a warrant, to obtain location data. 156 F. 4th, at 93; 149 F. 4th, at 496. According to reports, however, a Missouri sheriff was able to access location data despite uploading "utterly irrelevant materials." 156 F. 4th, at 93; see 149 F. 4th, at 496, n. 2.

The Commission's Enforcement Bureau launched an investigation into the carriers' practices. Believing that the carriers had violated laws and regulations requiring them to take reasonable steps to keep location data confidential,

the FCC issued notices of apparent liability under §503(b)(4). See *In re Verizon Communications*, 35 FCC Rcd. 1698, 1712 (2020) (citing 47 U. S. C. §222; 47 CFR §64.2010(a) (2014)); *In re AT&T Inc.*, 35 FCC Rcd. 1743, 1756 (2020) (same). After reviewing the carriers' responses, the Commission reduced the amount of Verizon's penalty. *In re Verizon Communications*, 39 FCC Rcd. 4259, 4260 (2024). But otherwise finding "no reason to cancel" the forfeitures, the Commission issued orders assessing penalties of roughly $57 million against AT&T and $47 million against Verizon. *In re AT&T Inc.*, 39 FCC Rcd. 4216, 4216–4217 (2024); 39 FCC Rcd., at 4260.

The carriers paid their penalties and filed petitions for review in their respective Courts of Appeals. The carriers raised multiple challenges to the Commission's orders, including that requiring forfeiture without the opportunity for a jury trial violates the Seventh Amendment.

The Fifth Circuit granted AT&T's petition for review and vacated the Commission's order. 149 F. 4th 491. The court held that the FCC's enforcement procedures violate the Seventh Amendment because, when the Commission issues an order at the end of forfeiture proceedings, it "has already found the facts, interpreted the law, adjudged guilt, and levied punishment"—all without the involvement of a jury. *Id.*, at 503.

The Second Circuit denied Verizon's petition for review. 156 F. 4th 86. Parting ways with the Fifth Circuit, the court explained that the "FCC's forfeiture order . . . does not, by itself, compel payment." *Id.*, at 106. Before a carrier can be made to pay, the Department of Justice "needs to initiate a collection action" under §504. *Ibid.* The court thus held that the Commission does not violate the Seventh Amendment when it issues forfeiture orders without a jury. See *id.*, at 107; see also *Sprint Corp.* v. *FCC*, 151 F. 4th 347, 359–360 (CADC 2025).

We granted certiorari as to both decisions to resolve the conflict. 607 U. S. 1120–1121 (2026).

## II

The carriers contend that the FCC's forfeiture proceedings violate the Seventh Amendment. We disagree. Forfeiture orders issued under §503(b)(4) do not definitively resolve the parties' legal obligations. And the Commission's factual findings are not conclusive. It thus does not offend the Constitution for the Commission to issue forfeiture orders without the involvement of a jury.

### A

The Seventh Amendment "preserve[s]" the right to trial by jury in "Suits at common law." It applies in all proceedings, whatever their "peculiar form," in which "legal rights" are to be "settle[d]." *Parsons* v. *Bedford*, 3 Pet. 433, 447 (1830). It does not, however, "prescribe at what stage" of a legal dispute "a trial by jury must, if demanded, be had." *Capital Traction Co.* v. *Hof*, 174 U. S. 1, 23 (1899). The Amendment requires only that, before legal rights and obligations are conclusively "ascertained and determined," *Parsons*, 3 Pet., at 447, a party has the chance to insist that a jury make the "ultimate determination of issues of fact," *Ex parte Peterson*, 253 U. S. 300, 310 (1920).

Consistent with these principles, this Court has upheld nonjury adjudications making initial findings of fact that are subject to *de novo* review in a subsequent jury trial.

In *Meeker* v. *Lehigh Valley R. Co.*, 236 U. S. 412 (1915), the Court considered the Hepburn Act, which authorized the Interstate Commerce Commission to prepare a report and "make an order directing" rail carriers "to pay" "damages" to customers who had been charged unreasonable rates. 34 Stat. 590. But the shipper could enforce the order only by succeeding in a subsequent jury trial where the report would serve as prima facie evidence. See *ibid.* The

Court rejected a Seventh Amendment challenge to this enforcement structure, which "cut[] off no defense," "interpose[d] no obstacle to a full contestation of all the issues," and took "no question of fact from" the "jury." *Meeker*, 236 U. S., at 430.

*Ex parte Peterson* is of a piece. 253 U. S. 300. There, the District Court (Augustus Hand, J.) appointed an "auditor" to "make and file a report" "as to the facts" concerning disputed coal deliveries, which would serve as prima facie evidence before the jury. *Id.*, at 304. As in *Meeker*, we rejected a Seventh Amendment challenge to this scheme because it left for the jury the "ultimate determination of issues of fact." 253 U. S., at 310.

The FCC's forfeiture proceedings fit comfortably within these precedents. The orders at issue did not settle the carriers' legal obligations because, stated simply, they did not create an obligation to pay. And the orders did not reflect the ultimate determination of any fact because, before the carriers could have been made to pay, the Government was required to prove its case to a jury.

First, several features of the statute demonstrate that forfeiture orders do not obligate payment. The statute nowhere gives the Commission the authority to execute on a forfeiture order; it cannot, for example, seize the carriers' assets or obtain liens on their property. See *Federal Election Comm'n* v. *Ted Cruz for Senate*, 596 U. S. 289, 301 (2022) (agency "literally has no power to act . . . unless and until . . . authorize[d] . . . by statute" (internal quotation marks omitted)). A recipient of a forfeiture order incurs no penalties for nonpayment, and interest does not accrue on the sum. *In re Amendment*, 19 FCC Rcd. 6540, 6542, n. 16 (2004); FCC Directive, FCC INST 1157.5, Forfeiture Tracking, Collections and Follow-up Systems 1–3 (May 22, 2023). And under §504(c) of the Act, the Commission cannot hold "the existence of a notice of liability or an order of forfeiture" against a regulated party "unless the forfeiture has been

paid or a court" has ordered payment.  *Pleasant Broadcast-ing Co.* v. *FCC*, 564 F. 2d 496, 500 (CADC 1977); see also 15 FCC Rcd. 303, 304 (1999) (Commission will not hold "the pendency of a forfeiture action prior to final adjudication" against a regulated party); Brief for Federal Parties 40–41. The statute thus prevents the Commission from penalizing a party for failing to act in response to the mere existence of a forfeiture order, which in turn suggests that the party need not comply in the first place.  See Tr. of Oral Arg. 77, 89–90.

Second, the Commission's factual findings have no effect in a subsequent enforcement suit.  The statute provides that forfeitures under §503(b)(4) "shall be recoverable," ex-clusively, in a "trial de novo."  §504(a); see also *Pleasant Broadcasting*, 564 F. 2d, at 500 ("Government must bring" §504 action "if it wishes to collect the fine").  And "trial de novo" means a proceeding "in which the whole case is gone into *as if no trial whatever had been had*" in the initial tri-bunal.  Black's Law Dictionary 1677 (4th ed. 1951) (empha-sis added).  Thus, for the purpose of a §504 trial—the only means by which the Government can collect a penalty—it is as if the Commission never found any facts at all.[1]  Before a regulated party can be made to pay, the jury gets the last word.[2]

---

[1] It bears noting as well that the ordinary meaning of "trial de novo" includes *de novo* review of the Commission's *legal* conclusions.  See *Sprint Corp.* v. *FCC*, 151 F. 4th 347, 360 (CADC 2025) ("all issues of fact and law are subject to the trial de novo" (internal quotation marks omit-ted)); 156 F. 4th 86, 107 (CA2 2025) (same).  Regulated parties thus may challenge the Commission's legal conclusions in a §504 enforcement ac-tion just as they may contest the Commission's factual determinations. See *McLaughlin Chiropractic Associates, Inc.* v. *McKesson Corp.*, 606 U. S. 146, 152 (2025); see also Tr. of Oral Arg. 78.

[2] The dissent speculates that, had the carriers declined to pay, the Gov-ernment might have brought an enforcement action in a jurisdiction where circuit precedent precluded review of the Commission's legal con-clusions.  See *post*, at 5–6 (opinion of THOMAS, J.); see, *e.g.*, *United States*

Given these features of the Commission's enforcement scheme, the Commission may issue forfeiture orders without the involvement of a jury. Like the ICC's order in *Meeker* and the auditor's report in *Peterson*, the Commission's orders do not "settle" their recipients' legal obligations. *Parsons*, 3 Pet., at 447. Nor do the Commission's orders make any "ultimate determination[s]" of fact. *Peterson*, 253 U. S., at 310. The Government cannot collect before it successfully proves its case to a jury. At day's end, a forfeiture order issued under §503(b)(4) is simply the Commission's own determination. Its only legal effect is to enable the Department of Justice to file a suit to recover for the carriers' suspected violations.

B

Refusing to take yes for an answer, the carriers insist that they actually *must* pay. They point out that §503 uses words that sound in a mandatory register—the Commission "determine[s]" whether a forfeiture is appropriate, "assesse[s]" the "amount" of such a penalty, and "impose[s]" that penalty. §§503(b)(1), (b)(2)(E), (b)(4). "[A]lone and in isolation," these words tell us little about whether a §503(b)(4) order truly settles the carriers' rights and duties. *New York* v. *United States*, 505 U. S. 144, 169–170 (1992). The proper understanding of such statutory terms depends on "their place in the overall statutory scheme." *Turkiye Halk Bankasi A.S.* v. *United States*, 598 U. S. 264, 275 (2023) (internal quotation marks omitted). And as explained above, the Commission is powerless to visit any

_____

v. *Stevens*, 691 F. 3d 620, 622 (CA5 2012). We decline to engage in such speculation, particularly in service of an argument that the carriers themselves did not raise. See *National Endowment for Arts* v. *Finley*, 524 U. S. 569, 584 (1998); Brief for Federal Parties 44.

adverse consequences on a regulated party who receives a forfeiture order.[3]

The carriers next insist that this case is *SEC* v. *Jarkesy*, 603 U. S. 109 (2024), all over again. But *Jarkesy* only proves our point. There, we held that the Securities and Exchange Commission (SEC) could not impose civil penalties using its in-house administrative process. Those penalties were immediately enforceable; the SEC could garnish the recipient's wages or deduct a portion of the forfeiture from his tax return. See 17 CFR §§204.50, 204.52, 204.54–204.56, 204.60–204.65 (2024). And if the SEC were required to resort to judicial means of enforcement, no jury was available—at least as to the underlying legal violation. See 15 U. S. C. §78u(e); see, *e.g.*, *SEC* v. *Gerasimowicz*, 9 F. Supp. 3d 378, 381–382 (SDNY 2014); *SEC* v. *McCarthy*, 322 F. 3d 650, 658 (CA9 2003) ("By the time a [§78u(e)] application is filed by the Commission, the time and opportunity for adjudicating the merits of the claim have been exhausted; all that is left to do is enforce the order"). That means that the ultimate determination of the facts giving rise to the obligation to pay rested not with a jury, but with the SEC alone. As we held, the Seventh Amendment forbids that result. See *Jarkesy*, 603 U. S., at 117, 120–121.

No matter, the carriers say. Even if the Commission's orders do not require payment, they contend, the Seventh Amendment nonetheless applies because forfeiture orders

———————

[3] The carriers relatedly contend that forfeiture orders create an obligation to pay because their recipients "shall be liable to the United States." 47 U. S. C. §503(b). This language, however, simply authorizes a lawsuit—it "creat[es] . . . a right of action." *Key Tronic Corp.* v. *United States*, 511 U. S. 809, 822 (1994) (Scalia, J., dissenting in part); accord, *id.*, at 818, n. 11 (majority opinion). It does not mean that an offender must immediately pay. Compare, for instance, 42 U. S. C. §1983. That statute provides that a state actor who violates a person's constitutional rights "shall be liable to the party injured." That means only that the victim may sue the perpetrator. See also 35 U. S. C. §271(b) (patent infringer "shall be liable" to patent owner). So too here.

have legal *effect*—namely, they enable the Department of Justice to initiate a §504 suit. Reply Brief 14. But the Seventh Amendment "secure[s] a right to the individual," *Parsons* v. *Armor*, 3 Pet. 413, 425 (1830), that attaches when "legal rights" are to be "determined," *Lorillard* v. *Pons*, 434 U. S. 575, 583 (1978). A forfeiture order under 47 U. S. C. §503(b)(4) does not determine legal rights; it is simply a "prerequisite[] to suit" that must be met before the Department may bring a collection action. *Mach Mining, LLC* v. *EEOC*, 575 U. S. 480, 486–487 (2015). It is thus analogous to a right-to-sue letter, see, *e.g.*, 42 U. S. C. §2000e–5 (Equal Employment Opportunity Commission), or an exhaustion requirement, see, *e.g.*, §1997e(a) (Prison Litigation Reform Act)—statutory conditions precedent that enable a subsequent suit, see *Mach Mining*, 575 U. S., at 487. The Seventh Amendment does not extend to such "preliminary" procedures. *Peterson*, 253 U. S., at 310.

Finally, the carriers argue that FCC forfeiture orders cause reputational and practical harms entitling them to a jury. Brief for AT&T, Inc., et al. 35–36 (Brief for the Carriers). They contend that the Seventh Amendment applies to such harms, "even where no money is at stake." *Id.*, at 35. This argument is hard to square with the text of the Seventh Amendment, which applies only to suits "where the value in controversy shall exceed twenty dollars." See 156 F. 4th, at 106 ("we fail to see how [reputational harm] implicate[s] the Seventh Amendment, which requires a jury trial only upon an effort to collect payment of monetary damages" (citing *Jarkesy*, 603 U. S., at 123)).

Textual implausibility aside, the carriers' theory proves too much. Reputational harm may befall any party in the preliminary stage of a legal proceeding. The filing of a complaint may trigger negative press. So too may the filing of an indictment against a criminal defendant. And plaintiffs or prosecutors might dismiss the complaint or indictment before the case proceeds to a trial. See Fed. Rule Civ. Proc.

41(a)(1)(A)(i); Fed. Rule Crim. Proc. 48(a). Yet this has never been thought to pose a Seventh Amendment problem.

### III

The carriers raise a second challenge based on this Court's unconstitutional conditions doctrine. They argue that the Commission's forfeiture scheme puts them to an impermissible choice: waive their jury right by voluntarily paying the forfeiture in exchange for guaranteed but deferential judicial review in the court of appeals;[4] or decline to pay, and wait to make their case before a jury in an enforcement suit that may never come. Because the costs of invoking their right under the second option are impermissibly high, the carriers contend, they are coerced into waiving their rights and proceeding under the first.

The unconstitutional conditions doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz* v. *St. Johns River Water Management Dist.*, 570 U. S. 595, 604 (2013). In other words, the Government may not effectively deny constitutional rights by making it too costly to exercise them.

That doctrine is a poor fit for this case. The Seventh Amendment applies only to "[s]uits," and §503(b)(4) proceedings do not fit the bill. The only suit in the statutory scheme is a §504 enforcement action, which the Department of Justice is not required to pursue. So if the carriers elect not to pay and await an enforcement action, and the Department decides never to bring one, then the carriers' jury right does not attach in the first place. See Tr. of Oral

---

[4] The parties have litigated this case on the premise that a regulated entity must first pay the forfeiture before it may obtain review in the court of appeals under the Hobbs Act. See Brief for the Carriers 9; Brief for Federal Parties 5; see also *AT&T Corp.* v. *FCC*, 323 F. 3d 1081, 1083–1085 (CADC 2003). We express no view on whether that premise is a sound one.

Arg. 60 (carriers' counsel acknowledging that their unconstitutional conditions claim is "one degree removed" and "not a direct penalty" on the right). The carriers' argument is thus something like a criminal defendant arguing that his right to trial by jury is infringed when the prosecutor decides to dismiss the indictment before trial. A counterintuitive notion, to say the least.

Regardless, the carriers are not impermissibly coerced into forgoing their right to a jury. They argue that insisting upon their jury right and awaiting an enforcement suit poses two distinct harms: first, that the Commission will use the existence of the order and the fact of nonpayment against them. Brief for the Carriers 46–48; see *id.*, at 49–50. And second, that the order will cause reputational harm while the carriers await an enforcement suit. *Id.*, at 45–46.

With respect to the first harm, as explained above, §504(c) prohibits the Commission from using unresolved forfeiture proceedings to a regulated party's prejudice in subsequent Commission proceedings. See *supra*, at 7–8. It is true, of course, that the Commission may consider the facts *underlying* the unresolved forfeiture in a future proceeding. See 12 FCC Rcd. 17087, 17103 (1997). But in that future proceeding, as the carriers recognize, the regulated party will have a chance to contest those facts anew. See Brief for the Carriers 47 ("a carrier may present evidence in a future proceeding to dispute an earlier factual finding"). The first proceeding, as the Government acknowledged, has no "preclusive effect" and the previously found facts are given no "special weight." Tr. of Oral Arg. 79; see Brief for Federal Parties 42. There is nothing unconstitutional about the Commission finding a fact in one proceeding and, if it is relevant later, again in a second. And before any asserted fact can be used to support a binding order to pay, the Government must prove it to a jury. See 12 FCC Rcd., at 17103 (regulated parties have "the full opportunity

to present appropriate evidence" regarding earlier factual findings "before having to pay any forfeiture").

Nor does the carrier's second concern—the risk of reputational harm—exact an unduly high cost for exercising their jury right. In the Sixth Amendment context, we have upheld "the imposition of . . . difficult choices" to forgo a jury trial by pleading guilty, even where the defendant faces a "certainty or probability" that the exercise of his trial right will result in a higher sentence if he is found guilty. *Chaffin* v. *Stynchcombe*, 412 U. S. 17, 30–31 (1973) (internal quotation marks omitted). If the "certainty or probability" of an increased prison term upon conviction does not impermissibly burden the Sixth Amendment right, it is hard to see how the uncertain prospect of reputational harm unduly burdens the Seventh Amendment right. See *id.*, at 30 (the Constitution does not "forbid[] every government-imposed choice . . . that has the effect of discouraging the exercise of constitutional rights").[5]

\* \* \*

The judgment of the United States Court of Appeals for the Fifth Circuit in No. 25–406 is reversed, and the case is remanded for further proceedings consistent with this opinion. The judgment of the United States Court of Appeals for the Second Circuit in No. 25–567 is affirmed.

*It is so ordered.*

---

[5] The carriers also argue that the specific forfeiture orders in this case misled them into paying, and that a refund is therefore appropriate. See Reply Brief 17–19; Tr. of Oral Arg. 75 (Government acknowledging that it "cannot mislead someone into waiving his jury trial rights"); see also *post*, at 3, 6–7 (opinion of THOMAS, J.). We express no view on the merits of this argument, what relief may be available to the carriers, or in what proceeding.

# SUPREME COURT OF THE UNITED STATES

---

Nos. 25–406 and 25–567

---

FEDERAL COMMUNICATIONS COMMISSION, ET AL.,
PETITIONERS
25–406                      *v.*
AT&T, INC.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

VERIZON COMMUNICATIONS, INC., PETITIONER
25–567                      *v.*
FEDERAL COMMUNICATIONS COMMISSION, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[June 4, 2026]

JUSTICE THOMAS, dissenting.

The Federal Communications Commission believed that AT&T and Verizon violated federal law. Rather than proceeding against them in federal court, the Commission performed its own adjudications. It determined that AT&T and Verizon were liable, and it ordered them to pay $57 million and $47 million, respectively. See *ante,* at 5. If they did not pay, the Commission could sue them in a forum where they would have been denied a constitutionally required jury trial *de novo*. AT&T and Verizon believed that the Commission lacked the authority to force them to pay penalties without a trial *de novo* in an Article III court. So, like most regulated parties challenging Commission orders, they paid under protest and brought suit to vindicate their position, set aside the orders, and get their money back.

The Court agrees with AT&T and Verizon that they were entitled to a jury trial *de novo* before an Article III court before they could be forced to pay. It agrees that they did not in fact receive such a jury trial *de novo*. But, it rules in favor of the Commission. The Court does so because the Commission, after AT&T and Verizon paid it over $100 million, took the position that its orders were not really binding after all. The Commission now agrees that AT&T and Verizon would have been entitled to a jury trial *de novo* in an Article III court had they declined to pay. Because its orders were not binding until after that jury trial, the Commission says, AT&T and Verizon in reality paid the Commission voluntarily. The Court accepts that account and does not grant the carriers any relief. Because I would give the parties an opportunity to proceed under a correct understanding of the law, I respectfully dissent.

## I

## A

When the Federal Government seeks to deprive a person of property, it must go through an Article III court. *SEC* v. *Jarkesy*, 603 U. S. 109, 151 (2024) (GORSUCH, J., concurring). "That means the regular course of trial proceedings with their usual protections, not the use of ad hoc adjudication procedures before the same agency responsible for prosecuting the law, subject only to hands-off judicial review." *Ibid.* (citation omitted). Thus, as this Court held in *Jarkesy* and reaffirms today, agencies can collect penalties only after adjudication in court through a trial *de novo*. See *id.*, at 120, 134; *ante,* at 10.

## B

The Commission determined that AT&T and Verizon violated federal law by mishandling user location data. See *ante*, at 4–5. The Commission sent them "Notice[s] of Apparent Liability" with its tentative conclusions. App. to Pet.

for Cert. in No. 25–406, p. 47a; App. to Pet. for Cert. in No. 25–567, p. 43a.  AT&T and Verizon responded with various constitutional, statutory, and factual arguments.

The Commission then issued "order[s]" commanding AT&T and Verizon to pay $57 million and $47 million, respectively.  App. to Pet. for Cert. in No. 25–406, at 131a; App. to Pet. for Cert. in No. 25–567, at 138a–139.  The orders were structured like judicial opinions.  They explained what AT&T and Verizon did, what the law required, and how the law applied to the facts.  The orders imposed liability for monetary penalties.  In AT&T's case, the "Ordering Clauses" said:

> "**IT IS ORDERED** that, pursuant to section 503(b) of the Act, 47 U.S.C. § 503(b), and section 1.80 of the Commission's rules, 47 CFR §1.80, AT&T, Inc., **IS LIABLE FOR A MONETARY FORFEITURE** in the amount of [$57,265,625] for willfully and repeatedly violating section 222 of the Act and section 64.2010 of the Commission's rules."  App. to Pet. for Cert. in No. 25–406, at 131a.

Verizon's order contained identical language directing it to pay about $47 million.  App. to Pet. for Cert. in No. 25–567, at 138a.  Although the orders stated that AT&T and Verizon could receive a jury trial *de novo*, they also described payment of the penalty as mandatory based on the Commission's adjudication alone: "Payment of the forfeiture shall be made in the manner provided for in section 1.80 of the Commission's rules within thirty (30) calendar days after the release of this Forfeiture Order."  *Id.*, at 139a; App. to Pet. for Cert. in No. 25–406, at 131a.

In the orders, the Commission asserted that it could impose these penalties without involving an Article III court.  It informed AT&T and Verizon that, contrary to what the Court holds today, agency monetary penalties such as these did not "need to be adjudicated in Article III courts with a

right to trial by jury." App. to Pet. for Cert. in No. 25–406, at 127a. In the Commission's view, Congress could put claims such as these "beyond the ambit of the Seventh Amendment by assigning their resolution to a forum in which jury trials are unavailable." *Id.*, at 127a–128a (internal quotation marks omitted); contra, *ante,* at 10 (majority opinion). The Commission also expressly disagreed with the Fifth Circuit's then-recent decision in *Jarkesy* v. *SEC*, 34 F. 4th 446 (2022), which held such adjudications unconstitutional. See, *e.g.*, App. to Pet. for Cert. in No. 25–567, at 134a. This Court would affirm the Fifth Circuit's decision a year later. *Jarkesy*, 603 U. S., at 124–125, 140–141.

Under protest, AT&T and Verizon both paid the amounts ordered, which was understood to be a precondition to their ability to file petitions for review in federal court. See Petition for Review in No. 24–60223 (CA5), ECF Doc. 1–1, p. 1, n. 1; Petition for Review in No. 24–1733 (CA2), ECF Doc. 1–1, p. 1. AT&T filed a petition for review in the Fifth Circuit, and Verizon filed one in the Second Circuit. At every stage of their cases, they preserved their position that they should have received an Article III adjudication before being forced to pay. The Fifth Circuit agreed with AT&T and set aside the Commission's order, and the Second Circuit agreed with the Commission. We granted certiorari and consolidated the two cases. 607 U. S. 1120–1121 (2026).

## II

### A

The Court accepts the Government's newfound account that under the Act, the Commission's self-styled "orders" were mere nonbinding notices that the regulated parties were free to ignore. See *ante,* at 7 ("The orders at issue . . . did not create an obligation to pay"). The Court also accepts that the orders would receive no deference in the *de novo* enforcement action necessary for the Commission to force payment. *Ante*, at 8 ("[F]or the purpose of a §504 trial—the

only means by which the Government can collect a penalty—it is as if the Commission never found any facts at all"); accord, *ibid.*, n. 1. The Court's decision is premised on those important limitations, which means that the Commission's orders have no legal import except as preconditions for a future suit. See *ante*, at 11. I agree with the Court that this interpretation of the Act should govern future proceedings so as to bring the Commission's enforcement practices into harmony with the Constitution.

B

But as a court, we must resolve the cases before us. Regardless of what the Commission will do in the future, or what the Court believes it should have done all along, we granted certiorari in cases arising from two orders that the Commission addressed to AT&T and Verizon in 2024. At that time, neither the Commission nor the courts complied with the limits that the Court describes today.

1

When the Commission issued the orders, AT&T and Verizon could not expect the constitutionally required trial *de novo* that the Court envisions today. If AT&T and Verizon ignored the orders and the Government brought an enforcement action, the enforcement action would not, in all probability, have proceeded "*as if no trial whatever had been had*" by the Commission. *Ante,* at 8 (internal quotation marks omitted). The Government can bring enforcement actions in any forum in which these nationwide carriers operate. See 47 U. S. C. §504(a). And, courts across the country denied regulated parties the right to a trial *de novo*. See Brief for T-Mobile USA, Inc., as *Amicus Curiae* 8–9. Many did not allow challenges to the Commission's legal determinations, even on appeal, no matter how erroneous they were. *E.g.*, *United States* v. *Stevens*, 691 F. 3d 620, 622 (CA5 2012) ("[W]e agree with the district court that its

jurisdiction was limited to considering the factual basis for the agency action"); *United States* v. *Neely*, 595 F. Supp. 2d 662, 669 (SC 2009) ("District court jurisdiction over an action to recover an unpaid forfeiture pursuant to Section 504 does not include the power to entertain challenges, raised in defense of a forfeiture recovery action, to the validity of an underlying FCC regulation").*  Others restricted challenges to the penalty amount, even though that amount would be at issue in a constitutional trial *de novo*.  *E.g.*, *United States* v. *Hodson Broadcasting*, 666 Fed. Appx. 624, 627–628 (CA9 2016) ("Review of a forfeiture amount is limited to whether it reflects a reasonable application of the statute").  And, when AT&T and Verizon paid their penalties, no carrier had ever received a jury trial in a §504 enforcement action.  See Brief for the Carriers 10.  AT&T and Verizon therefore had no way to ensure that they would proceed in a court that would respect their constitutional right to an Article III trial *de novo*.

2

I also do not share the Court's confidence that AT&T and Verizon should have known that these orders were nonbinding.  The Commission "**ORDERED** that . . . [the recipient] **IS LIABLE FOR A MONETARY FORFEITURE** in the amount[s]" specified in each case.  App. to Pet. for Cert. in No. 25–406, at 131a.  The orders stated that "[p]ayment of the forfeiture shall be made . . . within thirty (30) calendar days after the release of this Forfeiture Order."  *Ibid.* In the orders, the Commission took the position that it could issue the orders not because they were nonbinding, but because such orders could be imposed, from start to finish,

––––––––
*See also *United States* v. *TravelCenters of Am.*, 597 F. Supp. 2d 1222, 1227 (Ore. 2007); *United States* v. *Rhodes*, 2022 WL 17484847, *3–*4 (D Mont., Dec. 7, 2022); *United States* v. *Dudley*, 2020 WL 4284052, *3 (ND Ala., July 27, 2020); *United States* v. *Metzger*, 2008 WL 11336647, *2–*3 (MD Fla., July 7, 2008).

without the involvement of "Article III courts." *Id.*, at 127a. It stated that its authority to impose such penalties was "beyond the ambit of the Seventh Amendment." *Ibid.* (internal quotation marks omitted). Beyond the order itself, the Commission's regulations say that its orders "requir[e]" the penalty to "be paid in full" and set a date by which it "must be paid." 47 CFR §1.80(g)(4) (2024). If AT&T and Verizon did not pay, they arguably were subject to immediate statutory penalties for defying Commission forfeiture orders. See 47 U. S. C. §503(b)(1)(B). The procedure for judicial review of the orders that is the basis for this Court's jurisdiction treated them not as requests for voluntary payment, but as "final orders." 28 U. S. C. §§2342, 2344.

Nor is this a case in which AT&T and Verizon waived their Article III rights in exchange for a lesser penalty or without preserving their constitutional objections. Instead, AT&T and Verizon did what courts ordinarily encourage: They paid under protest and filed suit to get their payments back. Today, the Court punishes AT&T and Verizon for complying with a government order that they in good faith believed was obligatory, diligently preserving their objection to that order, and then litigating that objection so effectively as to cause the Government to change its position years later.

I respectfully dissent.